[No. 6297.]

## THE TUNNEL MINING AND LEASING COMPANY v. COOPER.

1. **Damages—Excessive—Remittitur**—Under the code provision (sec. 217), where in an action for personal injuries, or in like actions, excessive damages are awarded by the jury, as the result of passion or prejudice, the wrong is not to be cured by a remittitur, but the defendant is entitled to a new trial as of right.—(392)

Where the judge presiding at the trial declared the verdict excessive, and required a remittitur of nearly three-fourths of it, it was held that this must be regarded as in legal effect a finding of passion or prejudice, even though the judge refused to so declare. In determining whether a verdict was dictated by such improper motives, the court will take into consideration the evidence as to the character and extent of the injury, the amount of the verdict, the amount which the trial judge required should be remitted, the fact that the plaintiff yielded to such requirement, and the amount of a verdict given in the same cause, upon a former trial thereof.—(396)

The evidence examined and held to disclose either passion or prejudice, or a total misconception by the jury of its duties and obligations under the law.—(399-402)

Held, in either event the entire verdict was vitiated.—(402)

2. **Evidence—Variance**—Contention as to a variance alleged between the allegations of negligence in the complaint, and the proofs, examined, and an amendment suggested.—(402, 403)

*Appeal from Teller District Court*—Hon. J. W. SHEAFOR, Judge.

Mr. MILTON SMITH and Mr. CHARLES R. BROCK for appellant.

Mr. CHARLES C. BUTLER for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

In this action, for the recovery of damages for personal injuries, the plaintiff had a verdict for $38,750.00. One assignment of the motion for a new trial is based upon the fifth subdivision of sec. 217

of the code, providing therefor, where excessive damages appear to have been given under the influence of passion or prejudice. The trial court found the award excessive, and advised the plaintiff that a new trial would be granted, unless $28,-750.00 were remitted from the verdict. To this plaintiff assented and there was judgment for $10,-000.00. The defendant objected and excepted to the order allowing such remittitur, and to the judgment for $10,000.00, claiming that, since the verdict was held excessive, it had an absolute right, under the code, to a new trial.

These objections, with many others, are here for consideration, the case having been brought up by defendant for review on appeal.

Whatever the rule may be in other jurisdictions, in this state it is settled, in the case of *The Davis Iron Works Co. v. White,* 31 Colo., page 82, in a well and carefully considered opinion, upon a comprehensive review of all the decisions to this point, that where, in an action for damages for personal injuries, and in other like actions, the verdict is excessive, and is returned as a result of passion or prejudice, it is beyond the power of the trial court to allow a remittitur of the excess, and enter a judgment for the residue, but that the verdict must be set aside, and a new trial granted. The conclusion of the court in that case, in an opinion by Chief Justice Campbell, was stated in this emphatic and unmistakable language:

"The result of our conclusion is—and that is the only point which we decide—that, under our code, where, in an action for personal injuries, and others standing on like ground, a verdict is excessive, and was returned as the result of passion or prejudice upon the part of the jury, it should be set aside in its entirety and a new trial awarded, and that it

is beyond the power of the trial court to order a remittitur as to the part which it deemed excessive, and enter judgment for the residue, because the entire verdict is vitiated by the improper motive, and it is impossible for the court to determine that any particular part is free from objection and some other part is bad. The learned district judge, upon first impression, was of opinion that the verdict should be set aside in its entirety, but upon subsequent investigation concluded that the power to order a remittitur, though not strictly one that was inherent in the court, might, nevertheless, be exercised if the plaintiff consent, because the reduction of the verdict is in favor of the defendant, and, therefore, he is not in a position to complain. This reason, at first blush plausible, is the one often given. The injury to the defendant in such circumstances does not consist in the mere striking from a verdict of a portion of it, but in entering judgment against him for any part of a verdict, the whole of which is vitiated by improper motives of a jury. The judgment should be reversed and the cause remanded, and it is so ordered.''

So that, if it can be fairly seen and held that the jury here returned an excessive verdict, influenced by passion or prejudice, or from any wrongful motive, a new trial must be granted, as it is a just inference that a finding for the plaintiff at all may have been brought about by improper considerations.

The legislature has given to a losing party an absolute right to a new trial, when he brings his cause within any of the seven stated grounds for which new trials are to be granted under the code. The provision upon which the court acted in allowing the remittitur in this case, and which ground,

among others, was relied upon by defendant for a
new trial, reads thus:

"Fifth.   Excessive or inadequate damages ap-
pearing to have been given under the influence of
passion or prejudice."

It is apparent that trial courts here, under this
provision, no longer have power to set aside verdicts
because simply excessive, but can only do so when it
is also found that the excess award is due to passion
or prejudice.   When the finding is that the verdict
was so reached, a new trial must be granted, as it is
then beyond the power of the court to permit a re-
mittitur of a portion of the verdict and enter a judg-
ment for such sum as in its judgment the jury should
have returned.

Substantial support is found for this view in
the case of *Wall et al. v. Livezay,* 6 Colo., at page
465, where this is said:

"In relation to the amount of damages awarded
the plaintiff, we have to say that, in cases of this
character, the law does not warrant us in disturbing
the verdict where no important error has occurred
on the trial, unless the amount of damages allowed
is so manifestly disproportionate to the injury re-
ceived as to make it apparent that the jury were in-
fluenced by prejudice, misapprehension, or by some
corrupt or improper consideration."

And, again, in *City of Denver v. Dunsmore,* 7
Colo. 328, this court said:

"Second.   Upon the exception reserved to the
overruling of the motion for a new trial, on the
ground assigned by appellant, that the damages
given by the jury were excessive, many of the same
principles just announced apply.   The true measure
of damages is, as contended for, compensatory only.
But where the amount of damages does not depend
on computation, as in cases for personal injuries, as

we said in *Wall et al. v. Livezay,* 6 Colo. 465: 'It is exclusively the province of the jury to estimate and assess the damages, and the amount to be allowed in such cases rests largely in their sound discretion.' And, as there announced, to warrant the court in interfering with that discretion, it must be apparent that the amount of damages given by the jury is so disproportionate to the injury received as to show that the jury were influenced by prejudice, misapprehension, or by some corrupt or improper consideration.''

To the like effect is *D. & R. G. R. Co. v. Heckman,* 45 Colo. 470.

In 18 Ency. P. & P., at page 125, it is said:

''When by statute a new trial is given as of right to the defendant and the recovery is excessive, a remittitur cannot be entered without his consent.''

In 14 Ency. P. & P., page 756, it is said:

''Where the damages are unliquidated, or there is no fixed rule by which the measure of damages can be ascertained, as in torts and personal injury cases, the amount is referred to the discretion of the jury, and the court will not ordinarily interfere. In such cases, no mere difference of opinion as to the amount of damages will justify an interference by the court unless the amount is so unreasonable and excessive as to be indicative of passion, prejudice, partiality, or corruption of the jury.''

The case of *Thomas v. Womack,* 13 Tex. 580, was an action for damages for assault and personal injury; there was a verdict for $10,000.00; upon motion for new trial the plaintiff remitted $8,500.00; thereupon the motion was denied and judgment entered for $1,500.00. From this ruling defendant appealed, and assigned error upon it, and the court,

after commenting upon the authorities relied upon to support the ruling, said:

"These, it will be seen, are but the ordinary cases of permitting a remittitur where the measure of damages is matter of law, and the court can determine with certainty what damages the plaintiff is entitled to recover by applying the law to the evidence. But the present is a very different case. Here the law furnishes no other criterion by which to measure the damages which may be given than the discretion and sense of right and justice of the jury; and reserves to the court no other control over the verdict than to grant a new trial, where the damages are so excessive as to bear the evident impress of prejudice, passion, gross ignorance or corruption. In cases where there is no certain measure of damages, the court will not substitute its own sense of what would be the proper amount of the verdict, and will not set aside a verdict for excessive damages, unless there is reason to believe that the jury were actuated by passion, or by some undue influence, perverting the judgment. No more will the court substitute its sense of what would be the proper amount of the verdict where it is so excessive as to warrant the belief that the jury have been misled either by passion, prejudice or ignorance; but will set the verdict aside altogether, and grant a new trial. For to permit the verdict to be reduced to an amount which the court might think reasonable in such a case would be to substitute the opinion of the judge for the verdict of the jury, and, in effect, to deny the aggrieved party the right to a trial by an impartial jury. Where the verdict was confessedly so flagrantly excessive, as the remittitur admits it to have been in this case, it must be ascribed to prejudice, partiality, passion, or some undue or improper influence or cause, perverting the judgment of the

jury; and to permit any part of it to stand would not be consistent with the preservation of the impartiality, integrity and purity of the trial by jury.''

The right, by this provision, to grant new trials, because of excessive verdicts, unless influenced by passion or prejudice, having been withdrawn from the courts, it logically follows that when, under this particular subdivision of the code, it was found that the verdict was excessive and a remittitur of nearly three-fourths of it was required, such finding, although the judge may have declared that he' was not able to say that the verdict was returned as the result of passion or prejudice, was, as matter of law, a finding to that effect, and the verdict must be so treated. Upon such a verdict, defendant had an absolute right, under the code, to a new trial, and the court had no more authority to deny it, or disregard a portion of the verdict and enter a judgment upon the residue, than it had to deny the plaintiff a jury trial, or enter judgment against it without any trial at all. Still, without a verdict for that sum, and, indeed, without any lawful verdict, judgment was given for $10,000.00 upon the mere consent of plaintiff to accept it. That action was a plain violation of law, because what the code of civil procedure gives, in the situation here disclosed, and all that it gives, is a right to the losing party to have, and it makes it the duty of the court to grant, a new trial.

In *Sloan v. N. Y. Cen. & Hudson River R. R. Co.*, 1 Hun. 540, a personal injury case, the New York court said:

''The court cannot, in action of tort, reduce a verdict of a jury, because it is deemed excessive. The only remedy in such a case is to set it aside and order a new trial.''

In 18 Ency. Pl. & Pr., page 144, it is said:

''Where the damages are so excessive as to be

accounted for only on the ground of passion or prejudice on the part of the jury, a remittitur will not cure the error, as such passion or prejudice will be deemed to have influenced the finding of the jury on the issues of fact.''

In *Gulf, etc., Ry. Co. v. Coon*, 69 Tex. 730, the court, in a suit for personal injury to a passenger, said:

''The trial judge concluded that it was excessive, as he required plaintiff to enter a remittitur of three thousand dollars as a condition to his overruling the motion for a new trial. If the judge was of opinion the verdict was excessive, he should have granted a new trial. The damages are assessed by the jury; if the verdict is excessive, the judge, in actions like this, has no measure by which to determine how much it is excessive; his attempt to do so is an invasion of the rights of the jury. His only course in such a case is to grant a new trial.''

Since, therefore, on principle and authority, the finding of the court that the verdict was excessive must be treated, in legal effect, as a finding that it was returned under the influence of passion or prejudice, it was reversible error to allow plaintiff to remit a portion of it, and enter judgment for the residue, because the gist of the whole matter is that no trial by an impartial jury has been had. To permit the court, in such situation, to substitute its judgment as to the amount which the plaintiff ought to have, for that of a jury, would be in effect to deny the right of the defendant to such a trial as the general laws provide and the constitution guarantees.

Independent of a consideration of the finding of the court in its purely legal effect, in the light of former decisions of this court, and of the courts of last resort in other states, upon the same question, it is inconceivable that, upon the facts proven, a ver-

dict for the extraordinary sum of $38,750.00 repre-
sents the sound, wholesome, unimpassioned and im-
partial judgment of a jury, whose sole duty, under
the law and facts, was to award just and reasonable
compensatory damages only. Upon all of the evi-
dence, the amount of the award here, considered in
comparison with verdicts in similar cases, which our
own and other courts of last resort have said furnish
inherent evidence, solely because of the large sums
allowed, of having been returned through the influ-
ence of passion or prejudice, such, or like consider-
ations, must also be held to have been the moving
cause for the one under review. We are all the more
persuaded to this view because another jury, at a
former trial, having equal opportunity with the one
that returned this verdict, to ascertain and know the
character and extent of the injuries sustained, and
as well all the facts and grounds upon which plain-
tiff's right to recover at all were based, fixed the sum
of $5,200.00 as proper compensation; and by the
further fact that the presiding judge at the trial in
which this particular verdict was returned, required
that $28,750.00 should be remitted therefrom; and
also by the further fact that the plaintiff consented
to the surrender of that vast sum. If $38,750.00
fairly represented the amount which plaintiff justly
ought to recover for the injuries, temporary and
permanent, which he sustained, and for his mental
suffering and physical pain, we are quite persuaded
that it is highly improbable that another jury would
have declared less than one-seventh as much suffi-
cient to satisfy his claim; nor is it likely that the
judge presiding at the trial in which the verdict
was returned, being well and fully advised, with all
material facts before him, would, or could, under
such circumstances, say that the amount returned
was almost four times the sum, which, in his calm,

impartial and judicial judgment, the jury should have given; nor does it seem possible that, had the plaintiff himself, or his counsel, believed that he was entitled, in fairness and truth, to $38,750.00, there would have been voluntarily remitted, of that amount, once secured to him, more than two-thirds of it.

The plaintiff was by occupation a miner, and able, according to proofs, by working continuously, to earn approximately $1,200.00 a year. That plaintiff was seriously, painfully and to a degree permanently injured, seems clear from the evidence. It appears that his right collar-bone was fractured, and three ribs of the lower left side broken; that his general circulation was impaired, and that the broken ribs have never united, but extend out from the general contour of the chest about an inch, and do not give such full protection to some of the vital parts as they should and would afford in normal condition. That the right collar-bone is shortened one-half an inch, and also the left leg, to a like extent, which makes him permanently lame. He is compelled to constantly wear a belt, to mitigate the discomfort caused by the condition of the broken ribs. No injury is shown to his mental faculties; none of his limbs were broken, and none of his senses are impaired. The testimony shows that, at the time of the trial, he was able to be about without the aid of crutches or other assistance, and that he had recently been upon prospecting tours. The only direct evidence going to his ability to work at the time of the trial was the answer of the physician who attended him in his illness, to the question whether, in his present condition, he could do a man's work, which was, "Not at the present time."

The nature and extent of the injuries considered, the verdict is quite the largest to be found in

the annals of judicial history. The deliberations of the jury are secret, the presence or absence of passion or prejudice concerning them must, therefore, as a rule, be determined from the amount of the verdict itself. If there is in the verdict inherent evidence of such passion or prejudice, there should be no hesitancy on the part of the court to so declare, and act accordingly. There are three cases of special interest which have been determined by this court, where it was held that the verdicts, because of their respective amounts, carried inherent evidence that they were induced by passion or prejudice. We refer to the reasoning in these opinions in support of our conclusion here, as being in harmony with it. The cases are: *The Deep Mining & Drainage Co. v. Fitzgerald*, 21 Colo. 533; *Davis Iron Works Co. v. White, supra;* and *D. & R. G. R. R. Co. v. Scott*, 34 Colo. 99. In each the record shows the injuries to have been certainly as grievous as those received by plaintiff, and, without doubt, in the Fitzgerald case, vastly more serious and abiding.

An instructive and leading case, also in accord with our views, where a large number of authorities are reviewed and discussed, is that of *The Louisville & Nashville R. R. Co. v. Fox*, 11 Bush 495. That was an action for personal injuries, to recover the sum of $150,000.00, with $5,000.00 added for medical treatment and attendance, and $500.00 for baggage lost. The verdict was for $35,500.00. The opinion states that the value of the baggage was shown to have been $500.00, and the expense of medical treatment and attendance, $5,000.00; and for personal injuries, $30,000.00. There was no evidence in the case of passion or prejudice, except as furnished by the amount of the verdict. Upon a full consideration of the whole record, and a searching analysis of the entire transaction, the court

reached the conclusion that the amount of the verdict alone furnished evidence that it must have been reached through the influence of passion or prejudice. The injuries to Fox seem to have been far more severe and permanent, and his suffering far greater, than plaintiff's. In concluding the opinion, having reference to the duties and obligations of courts under such circumstances, it was said:

"We concede that courts of all grades should exercise extreme caution in interfering with verdicts of juries, and that an appellate court should hesitate, not only because of the delicacy of undertaking to set aside the finding of the constitutional triers of fact, but because of the concurrence with the jury of the judge presiding at the trial. But if, after giving due weight to the verdict of the jury and the approval of the circuit judge, this court is clearly convinced, in a case in which the plaintiff is only entitled to recover compensatory damages, that the jury has gone beyond compensation and inflicted punishment on the defendant under the influence of passion or prejudice, it is bound by the weightiest considerations of duty to direct a new trial. To refuse to do so is to abandon the defendant to the arbitrary will of the jury. The supervising control of the courts, both of original and appellate jurisdiction, is, in this country, an integral part of the jury system, and as indispensable to the right administration of justice as the panel of twelve men.

"We are well satisfied that the damages are excessive, and the result of passion or prejudice in the jury, and the judgment is reversed and the cause is remanded with directions to grant the appellant a new trial."

These suggestions are specially applicable here and correctly, as we think, indicate the duty of the court in the present case, as, upon a full considera-

tion of the entire record, with all inferences legitimately to be drawn therefrom, we reach the irresistible conclusion that, when viewed in the light of the facts and circumstances disclosed by the evidence, a verdict of such unusual proportions must have been the result of either passion or prejudice, or of a total misconception by the jury of its duties and obligations under the law. In either event, it is vitiated in its entirety. Upon the authority of *Davis Iron Works Co. v. White, supra,* such a verdict could not properly be made the basis for any judgment whatever. A new trial should have been granted.

There is no general charge of negligence in the complaint. The negligence complained of is alleged specifically, and is charged in these words:

"Plaintiff alleges that, on the said first day of May, 1905, when the plaintiff entered on the first work of the day, the defendant Walter Swanson entered the stope and ordered him to get a bar and spread the top posts of the top square set so as to allow a displaced cap to slip back in its place; that plaintiff refused to do so, replying to Swanson that the braces below were shot away and it was dangerous to spread top posts without restoring them, and that, if let alone, he would restore the cap to its place safely and properly; that said Swanson then, knowing that the braces were shot away and that pressure spreading the top posts would probably cause the entire timbering to collapse, without replacing the braces, negligently spread the top posts with a cross bar and thereby caused the whole timbering at the point to collapse, burying plaintiff in the ruins, without any fault or negligence on his part."

The testimony of the plaintiff shows that the thing which in fact caused the timbering to col-

lapse, burying him in the ruins, was the act of Swanson in giving a violent surge on the bar and throwing his weight heavily against one of the posts of the square set. Upon his cross-examination, the following testimony was adduced to this point:

"Q.—Do you mean to tell the jury that the collapse occurred without the stoping bar being tightened any more at all? A.—Yes, sir.

"Q.—How did that happen? A.—Mr. Swanson was standing here, and I stepped back, started to step out from here, where it was perfectly safe, and Mr. Swanson yelled at me; he said: 'The bar isn't tight yet,' at the same time giving a violent surge on the bar, throwing his weight heavily against this corner post here, and the square sets collapsed, and caught both of us."

There was other testimony by plaintiff, which showed that the bar between the square sets had not been tightened and that there was no pressure from it against the timbers, and that the violent surge upon the bar and pressure of Swanson upon the corner post, in throwing his weight heavily against it, was in fact the proximate cause of the collapse. It is urgently argued by counsel that there is such variance between the proofs which show the particular negligence which resulted in the injury complained of, and that which is specifically charged in the complaint, as having occasioned it, that a recovery in the present state of the record cannot properly be sustained. While we do not place the reversal of the judgment upon this assignment, we recognize the force of the claim, and suggest, in the event of a new trial, that the complaint, out of proper caution, be amended to correspond to the proof.

Since we conclude that the judgment must, in any event, be reversed for the reason stated, we deem it unnecessary and unwise to consider or pass

upon the other numerous errors assigned and argued. The judgment is reversed, and the cause remanded to the trial court for further proceedings, in conformity with the views here expressed.

Decision *en banc*.        *Reversed and remanded.*