## No. 11,020.

## KOHUT, et al. *v.* BOGUSLAVSKY.

Decided October 5, 1925.

Action for damages for personal injuries.  Judgment for plaintiff.

### *Reversed.*

1. APPEAL AND ERROR—*Modified Judgment.* The appellate court on review may not reduce the amount of a judgment for damages on the ground that it is excessive.

2. VERDICT—*Excessive—Appeal and Error.* If a verdict is excessive, but not to such an extent as to indicate that it is the result of passion or prejudice, the reviewing court has no power to interfere with it.

3.    *Excessive—Appeal and Error.* If a verdict is excessive and it appears that it was the result of passion, prejudice or a total misconception of the jury's duties, it will be set aside.

4.    *Excessive.* A verdict for $5,000 actual and $10,000 exemplary damages, held, under the facts disclosed, to show that the jury was influenced by passion, prejudice or other improper motive. There is in this verdict inherent evidence of passion or prejudice.

*Error to the District Court of the City and County of Denver, Hon. Henry J. Hersey, Judge.*

Mr. CHARLES GINSBERG, Mr. WAYNE A. GUNKLE, for plaintiffs in error.

Messrs. HODGES, WILSON & ROGERS, Mr. JAMES GRAFTON ROGERS, for defendant in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

DEFENDANT in error was plaintiff in the court below and brought this suit against plaintiffs in error to recover the sum of $25,000 damages for personal injuries. alleged to have been inflicted upon her by plaintiffs in error. She recovered a verdict and judgment for $5,000 actual damages, and $10,000 exemplary damages. Plaintiffs in error here seek a review of that judgment. The parties will be referred to here as in the trial court.

The only errors assigned, which we deem it important to consider, are those relating to the amount of the damages recovered.

It appears that dissensions arose among the members of the Russian Orthodox Church at Globeville, and the defendants were members of the Russian colony there. Troubles of a factional and racial nature had existed for a long period of time preceding the difficulty out of which this suit arose. On February 17, 1923, Father Alexis Boguslavsky was dean of the Russian Church in Colorado,

and the priest at Globeville. He was the husband of the plaintiff, and with his wife and their little daughter, eleven years of age, resided in the parish house, which was situated upon church property in the rear of the church building.

February 17, 1923, appears to have been a damp and chilly morning, and during the forenoon of that day, after Father Boguslavsky had left his home to go into the city of Denver, three or four women appeared, and entered the parish house. They ordered the plaintiff to leave, which they say she did voluntarily. At that time the little girl was ill and confined to her bed above stairs. Mrs. Boguslavsky denies their story and is corroborated by the little daughter. The women were followed into the house by a number of men, and other women and children. Some persons among the assembled crowd, the defendants being recognized as some of those present, it is claimed, assaulted, beat, pushed and forced Mrs. Boguslavsky and her sick daughter out of the house and into the street; that they threw plaintiff's clothes and other personal belongings into trunks and piled the trunks out of doors; that defendants then took possession of the house and of the church building. There is evidence tending to show that as the result of defendants' mistreatment of the plaintiff she suffered nervous shock as well as physical injuries. The evidence, briefly stated, tends to show that plaintiff remained in the street for perhaps two hours and a half; that when she was taken to a neighbor's house, she was put to bed and scarcely able to stand; that it was with difficulty she could lie down, and felt very badly; that the lower part of her spine was injured; that she had become very cold from being exposed to the weather in the street; that she was quite ill and could not remember what happened; that she had a high temperature and was practically out of her mind; that she was in bed about ten days; that her spine, chest and arms ached, and that she felt bruised all over; that she was terribly shocked and frightened and very nervous; that the daughter

was sick for three or four days before she was able to walk around; that after plaintiff was removed from her neighbor's to the parish house, she still remained in bed for about two weeks; that she still at that time had to be bandaged around her spine; that at the time of the trial she still suffered from the effects of what had happened; that if she endeavored to do her usual housework through the day she suffered at night as a result. Dr. Scherer was called immediately after she was put to bed, and attended her for two days. He testified that he found the woman suffering with intense pain in the back, some swelling, black and blue, showing recent injuries of some kind; that she was nervous and upset; that she had an injury of some kind in the back; that he could hardly move her; that she was very sensitive to the pain in her back and the left side of the lumbar region. He said that the bruise was what they called an ecchymosis looking bruise; that he could not make out a fracture in that locality; that he bandaged her up; that Dr. Young had been called and was helping him; that he called again about February 19th; that the swelling was still present although she seemed better; that she was very uncomfortable.

We do not think the evidence discloses that any permanent injuries were sustained by the plaintiff. The defendants contend that the evidence did not warrant a recovery, at most, of more than nominal damages, if indeed it was sufficient to justify any recovery. With this view we do not agree. There was ample evidence to sustain a verdict for substantial damages. However, we think the amount of the verdict in this case, in view of the evidence, was excessive, and that it must have been the result of passion or prejudice, or, as said by this Court in *Tunnel Mining Co. v. Cooper,* 50 Colo. 390, 402, 115 Pac. 901, 905 (39 L. R. A. [N. S.] 1064, Ann. Cas. 1912C, 504), "of a total misconception by the jury of its duties and obligations under the law."

Counsel for plaintiff say they admit that this Court

has power to affirm the judgment, if we find the damages to be excessive, on condition that plaintiff remits part of the judgment recovered, as suggested in 4 C. J. 1139.

We think counsels' position is not correct. If the verdict is excessive, but not to such an extent as to indicate that it is the result of passion or prejudice, we have no power to interfere with it. It is within the exclusive province of the jury to determine the amount of the damages, and so long as the jury has not misconceived its duties under the law, and has acted without passion or prejudice, even though its verdict should be in excess of what we might think reasonable or proper, we cannot disturb it. *Tunnel Mining Co. v. Cooper, supra.* If, however, the verdict is excessive and is the result of passion or prejudice, or of a total misconception of the jury's duties, then it is plainly our duty to set it aside in its entirety, and we have so held. *Davis Iron Works Co. v. White,* 31 Colo. 82, 89, 71 Pac. 384; *Tunnel Mining Co. v. Cooper, supra.*

This verdict is so much in excess of what we think the injuries suffered by plaintiff demand for reasonable compensation, that we cannot but conclude that the jury was influenced by passion or prejudice or other improper motive. We think there is in the verdict inherent evidence of passion or prejudice. *Tunnel Mining Co. v. Cooper, supra.*

The other alleged errors need not be discussed as they may not arise upon another trial of the case. For the reasons given, the judgment is reversed.

MR. CHIEF JUSTICE ALLEN, and MR. JUSTICE CAMPBELL concur.