560 P.2d 851 (1977)
Elizabeth A. ENRIGHT, Plaintiff-Appellee,
v.
J. A. GROVES and the City of Fort Collins, Colorado, Defendants-Appellants, and
Russel Buck, Defendant.
No. 76-163.
Colorado Court of Appeals, Div. III.
February 17, 1977.
*852 Harden & Napheys, Charles S. Bloom, Fort Collins, for plaintiff-appellee.
Yegge, Hall & Evans, Thomas N. Alfrey, Denver, for defendants-appellants.
Selected for Official Publication.
SMITH, Judge.
Defendants Groves and City of Ft. Collins appeal from judgments entered against them upon jury verdicts awarding plaintiff $500 actual damages and $1,000 exemplary damages on her claim of false imprisonment, $1,500 actual damages and $3,000 exemplary damages on her claim of intentional infliction of mental distress, also referred to as outrageous conduct, and $500 actual damages and $1,000 exemplary damages on her claim of battery. The jury returned a verdict in favor of defendant Buck on plaintiff's separate claim against him arising out of an occurrence at the police Station. No appeal has been taken relative to that verdict. Defendants contend that: (1) There was a lawful arrest; (2) the conduct of defendant Groves did not constitute the tort of outrageous conduct; and (3) the damages were excessive. The reject each contention and affirm.
The evidence at trial disclosed that on August 25, 1974, Officer Groves, while on *853 duty as a uniformed police officer of the City of Fort Collins, observed a dog running loose in violation of the city's "dog leash" ordinance. He observed the animal approaching what was later identified as the residence of Mrs. Enright, the plaintiff. As Groves approached the house, he encountered Mrs. Enright's eleven-year-old son, and asked him if the dog belonged to him. The boy replied that it was his dog, and told Groves that his mother was sitting in the car parked at the curb by the house. Groves then ordered the boy to put the dog inside the house, and turned and started walking toward the Enright vehicle.
Groves testified that he was met by Mrs. Enright with whom he was not acquainted. She asked if she could help him. Groves responded by demanding her driver's license. She replied by giving him her name and address. He again demanded her driver's license, which she declined to produce. Groves thereupon advised her that she could either produce her driver's license or go to jail. Mrs. Enright responded by asking, "Isn't this ridiculous?" Groves thereupon grabbed one of her arms, stating, "Let's go!"
One eyewitness testified that Mrs. Enright cried out that Groves was hurting her. Her son who was just a few feet away at the time of the incident testified that his mother also screamed and tried to explain that her arm dislocated easily. Groves refused to release her arm, and Mrs. Enright struck him in the stomach with her free hand. Groves then seized both arms and threw her to the ground. With her lying on her stomach, he brought one of her arms behind her in order to handcuff her. She continued to scream in pain and asked him to stop hurting her. Groves pulled her up and propelled her to his patrol car where, for the first time, he advised her that she was under arrest.
She was taken to the police station where a complaint was signed charging her with violation of the "dog leash" ordinance and bail was set. Mrs. Enright was released only after a friend posted bail. She was later convicted of the ordinance violation.
Unrebutted testimony by her physician at trial disclosed that she had a long history of shoulder dislocations in both arms prior to this incident, and that she had undergone surgery on both shoulders for this condition. The surgery on the left shoulder resulted in some restriction of movement and, if the arm was forced back, it was extremely painful. The surgery done on the right shoulder did not correct the dislocation problem and the evidence presented to the jury showed that if the arm was pushed back beyond a certain point that a painful dislocation would in fact then take place.

I
Appellants contend that Groves had probable cause to arrest Mrs. Enright, and that she was in fact arrested for and convicted of violation of the dog-at-large ordinance. They assert, therefore, that her claim for false imprisonment or false arrest cannot lie, and that Groves use of force in arresting Mrs. Enright was permissible. We disagree.
False arrest arises when one is taken into custody by a person who claims but does not have proper legal authority. W. Prosser, Torts § 11 (4th ed.). Accordingly, a claim for false arrest will not lie if an officer has a valid warrant or probable cause to believe that an offense has been committed and that the person who was arrested committed it. Conviction of the crime for which one is specifically arrested is a complete defense to a subsequent claim of false arrest. Hushaw v. Dunn, 62 Colo. 109, 160 P. 1037.
Here, however, the evidence is clear that Groves arrested Mrs. Enright, not for violation of the dog leash ordinance, but rather for refusing to produce her driver's license. This basis for the arrest is exemplified by the fact that he specifically advised her that she would either produce the license or go to jail. We find no statute or case law in this jurisdiction which requires a citizen to show her driver's license upon demand, unless, for example, she is a driver of an automobile and such demand is made *854 in that connection. See People v. McPherson, Colo., 550 P.2d 311; see also People v. Shriver, 186 Colo. 405, 528 P.2d 242; § 42-2-113, C.R.S.1973.
Defendants rely on Stone v. People, 174 Colo. 504, 485 P.2d 495, in support of their position that a lawful demand was made. We do not read that case as approving any requirement that an individual must produce a driver's license when such individual is not the driver of a vehicle.
In Stone the precise issue was whether a narcotics agent violated the defendant's Fourth Amendment rights by stopping him and asking to examine his driver's license after he had been observed driving a vehicle. Whether an agent could affirmatively demand a driver's license was not specifically at issue, because the facts in Stone indicate that after the agent had asked for defendant's license, but before there could be any response thereto, the agent noticed fresh needle marks on his arm. Defendant was then put under arrest. The court emphasized that it did not intend by its decision to "grant free license to law enforcement officers to stop an individual to obtain identification or address." (emphasis added).
Here, there was no testimony that Groves ever even attempted to explain why he was demanding plaintiff's driver's license, and it is clear that she had already volunteered her name and address. Groves admitted that he did not ask Mrs. Enright if she had any means of identification on her person, instead he simply demanded that she give him her driver's license.
We conclude that Groves' demand for Mrs. Enright's driver's license was not a lawful order and that refusal to comply therewith was not therefore an offense in and of itself. Groves was not therefore entitled to use force in arresting Mrs. Enright. Thus Groves' defense based upon an arrest for and conviction of a specific offense must, as a matter of law, fail.

II
Appellants next allege that Groves' conduct does not give rise to a cause of action for intentional infliction of mental suffering or outrageous conduct. Again, we disagree.
One commits this tort if, by extreme and outrageous conduct, he intentionally or recklessly causes severe emotional distress to another. The conduct must be so extreme in degree as to go beyond the bounds of decency and be such as would be regarded as atrocious and intolerable in a civilized community. Rugg v. McCarty, 173 Colo. 170, 476 P.2d 753. Whether Groves' conduct was sufficient to constitute outrageous conduct was a matter to be resolved by the trier of facts. See Rugg v. McCarty supra.
The jury found against Groves on this issue. Since there was substantial evidence before the jury to support such a finding, we may not overturn that finding on appeal. Vigil v. Pine, 176 Colo. 384, 490 P.2d 934.

III
Appellants also contend that the court erred in instructing the jury on exemplary damages. We are not so persuaded.
A jury may award exemplary damages in any civil action in which actual damages are awarded the victim and the injury complained of is accompanied by some malice or reckless disregard of an injured person's rights and feelings. French v. Deane, 19 Colo. 504, 36 P. 609; Wagner v. Dan Unfug Motors, Inc., 35 Colo. App. 102, 529 P.2d 656. See Carlson v. McNeill, 114 Colo. 78, 162 P.2d 226; Gray v. Linton, 38 Colo. 175, 88 P. 749; Republican Publishing Co. v. Conroy, 5 Colo.App. 262, 38 P. 423. Malice may be inferred from the reckless and wanton acts of the party causing the injury. Cohen v. Fox, 26 Colo. App. 55, 141 P. 504. Wanton and disregard of a parties' rights occurs if defendant knew or should have known that the injury ultimately complained of would probably result. Clark v. Small, 80 Colo. 227, 250 P. 385.
Since exemplary damages are punitive and are designed to inhibit or deter the type *855 of conduct for which they are awarded, they are assessed as an addition to the actual damages granted. Beebe v. Pierce, 185 Colo. 34, 521 P.2d 1263. This is true even though they both arise from the same conduct. In the instant case there was sufficient evidence to warrant the giving of the instruction.

IV
Lastly, appellants allege that the actual and exemplary damages awarded by the jury are grossly excessive and disproportionate to the injuries sustained. Again, we disagree.
The determination of the amount of damages to be awarded is within the sole province of a jury and will not be disturbed on review unless the verdict is so grossly and manifestly excessive as to indicate passion or prejudice for plaintiff. Davis v. Fortino & Jackson Chevrolet Co., 32 Colo. App. 222, 510 P.2d 1376; Kohut v. Boguslavsky, 78 Colo. 95, 239 P. 876.
The evidence before the jury amply supports the awards of actual damages. While Mrs. Enright did not consult a physician for relief from her pain or mental suffering immediately after the incident, and she did not miss any work because of her condition, the evidence is clear that she suffered substantial emotional distress and fear as a result of her confrontation with Groves. A witness inside a nearby building substantiated her son's testimony about the entire incident of her screaming and Groves' tripping her to the ground on her stomach, followed by her being marched off to a police car with handcuffs binding one arm. A friend and another officer who were present at the police station where she had been taken testified that Enright was distressed and "almost irrational" before she was released on bond. They testified that she expressed fear and anger when she thought that her son would be taken from her unless she was released from custody. We conclude that, under the facts adduced at trial, the awards of actual damages are not excessive and will not be disturbed on review. Davis, supra.
Nor do we agree that the awards of actual damages and exemplary damages are so disproportionate as to require reversal. See Wegner v. Rodeo Cowboys Association, 290 F.Supp. 369 (D.Colo.1968), aff'd, 417 F.2d 881 (10th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 60. We find no abuse of discretion by the trial court in its finding that the jury awards were not excessive. See Leo Payne Pontiac, Inc. v. Ratliff, 178 Colo. 361, 497 P.2d 997. The evidence in our view was sufficient to justify the jury's award of exemplary damages. See Miller v. Carnation Co., Colo.App. (No. 21349, announced February 3, 1977).
Judgment affirmed.
RULAND and BERMAN, JJ., concur.