Gary RAWSON, Plaintiff,

v.

SEARS ROEBUCK & COMPANY,
Defendant.

Civ. A. No. 81–K–1454.

United States District Court,
D. Colorado.

Jan. 27, 1982.

James A. Carleo, Pueblo, Colo., for plaintiff.

Robert S. Slosky, Michael D. Nosler, Rothgerber, Appel & Powers, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff's complaint, which was originally filed in the Pueblo County District Court, alleges that the plaintiff was wrongfully fired from his employment with the defendant and, alternatively, that the defendant wrongfully refused to allow him to resign. He states 11 claims for relief and seeks compensatory and punitive damages. After the plaintiff filed this action, the defendant removed it to this court, which has subject-matter jurisdiction under 28 U.S.C. § 1332(a).

Defendant moved to dismiss all of the plaintiff's claims, pursuant to F.R.Civ.P. 12(b)(6), arguing that none of them state a claim upon which relief may be granted. Briefs have been submitted and the motion is now ripe for determination. I now grant the motion in part and deny it in part.

### I. PRIVATE RIGHT OF ACTION

Plaintiff's first claim alleges that the defendant violated C.R.S. § 8–2–116 by firing the plaintiff solely because of his age.[1] In its motion to dismiss, defendant argues that this fails to state a claim upon which relief may be granted because the statute does not grant the right to bring a private civil action. In support of this argument, defendant cites C.R.S. § 8–2–117, which states that anyone who violates C.R.S. § 8–2–116 shall be subject to a fine of between $100 and $250. Defendant argues that this penalty provision means that the Colorado Legislature "has not seen fit to legislate any private civil right of action for violation of" C.R.S. § 8–2–116. Defendant then cites, without any elaboration, a string of six cases.

Whether a particular statute grants a private right of action is a question of statutory construction. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), the Supreme Court stated a four-part test for determining whether a federal statute has an implied private right of action:

1) [I]s the plaintiff 'one of the class for whose *especial* benefit the statute was enacted'—that is, does the statute create a federal right in favor of the plaintiff?

2) [I]s there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

3) [I]s it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

4) [I]s the cause of action one traditionally relegated to state law, in any area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

---

1. C.R.S. § 8–2–116 provides:

   No ... corporation conducting within this state any business requiring the employment of labor shall discharge any individual between the ages of eighteen and sixty years, solely and only upon the ground of age, if such individual is well versed in the line of business carried on by such ... corporation and is qualified physically, mentally, and by training and experience to satisfactorily perform and does satisfactorily perform the labor assigned to him, or for which he applies.

(citations omitted, emphasis in original). Because the present case involves a Colorado statute, the U. S. Supreme Court's analysis is not controlling;[2] however, in the absence of any contrary word from the Colorado Supreme Court,[3] the *Cort* test provides useful guidance.

▪ I conclude that the first three elements of the *Cort* test are satisfied here. First, C.R.S. § 8–2–116 especially singles out employees between the ages of 18 and 60 who have been discharged solely because of their age. By stating his first cause of action, plaintiff has alleged that he is within this class. Second, other statutes indicate that the Colorado Legislature intended to create a private right of action here. C.R.S. § 8–3–121(1) states,

> Any person who suffers injury because of an unfair labor practice has a right of action, jointly and severally, against all persons participating in said practice for damages caused to the injured person thereby.

C.R.S. § 8–3–108(1)(*l*) provides that unfair labor practices include committing "any crime or misdemeanor in connection with any controversy as to employment relations." This court of course cannot determine whether the defendant has criminally violated C.R.S. § 8–2–116. However, the Colorado legislature's broad definition of unfair labor practices indicates an intent to create a private right of action to anyone who can prove by a preponderance of the evidence that a defendant has violated a criminal labor statute. I conclude that the Colorado legislature intended to create a private right of action under C.R.S. § 8–2–116 and that such a right of action is consistent with the state's legislative scheme in labor relations. Plaintiff's first claim for relief therefore will not be dismissed.

## II. OUTRAGEOUS CONDUCT

Plaintiff's second claim alleges that defendant "willfully, wantonly, and maliciously fired the [p]laintiff, . . . and would not allow him to resign with dignity." It then alleges that defendant's actions constitute outrageous conduct. His third claim alleges that defendant's acts were intended to "cause extreme emotional distress to the [p]laintiff," and did in fact do so. Defendant's motion to dismiss simply states,

> Plaintiff's Second and Third Claims for Relief do not state a claim upon which relief can be granted for outrageous conduct resulting in emotional distress and is (sic) properly subject to dismissal.

In *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970), the Colorado Supreme Court considered the tort of intentional or reckless infliction of emotional distress. In that case the plaintiff has alleged that she had entered into a $180 health studio contract, became disabled at the first lesson and was then unable to continue her exercise sessions. After one of the defendants refused to allow her to rescind the contract,

---

**2.** Obviously the fourth element of the *Cort* test does not apply at all in the present case.

**3.** The three Colorado Supreme Court cases cited by the defendant are all inapposite. In *Gladden v. Guyer*, 162 Colo. 451, 459, 526 P.2d 953, 957 (1967), the court held that a party's violation of a public cattle-testing statute did not void a contract it entered into, but only made it voidable. The court's decision therefore implies that the other party could exercise a right stemming from the statute to void the contract if it so desired. In *Colorado Centennial Railroad Co. v. Humphery*, 16 Colo. 34, 36, 26 P. 165, 165–66 (1891), the court considered a statute that specified the size and background of juries that would try certain cases. The court stated,

> If by statute a new power or right is conferred, and a particular form or manner of proceedings in connection therewith is provided, it is an exclusion of any other mode.
>
> .  .  .  .  .
>
> Where a statute gives a new power, and at the same time provides the means of executing it, those who claim the power can execute it in no other way.

(citations omitted). I do not understand how this applies to the issue of what rights of action exist under a statute that is silent on the means of executing it. Finally, in *Quintano v. Industrial Commission*, 178 Colo. 131, 135–36, 495 P.2d 1137, 1139 (1972), the court held that it generally would not find an implied right of private civil action against a state agency in a new statute, because of the problems of sovereign immunity. Those considerations are obviously not present in a case between two private parties.

she continued to make payments, reducing the unpaid balance to $44.50. Although she had promised to pay that balance, her complaint alleged that the defendants repeatedly harassed her with numerous phone calls and letters demanding payment, and inquired with her employer about garnishing her wages, even though they did not have an outstanding judgment against her. Her complaint further alleged that defendants' acts

> were done *wilfully and wantonly* in disregard of her rights; and that the acts of the defendants were done *intentionally* with the *intention of causing [her] to suffer mental anguish, embarrassment, humiliation and extreme mental suffering.*

*Id.* at 173, 476 P.2d at 754 (emphasis in original).

The court found that this stated a cause of action, and reversed the trial court's granting of defendants' motion to dismiss. *Id.* at 177, 476 P.2d at 756. The court adopted Rest.2d Torts § 46 (1965):

> Outrageous Conduct Causing Severe Emotional Distress:
>
> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, . . . .

The court also quoted a Restatement Comment

> liability has been found only in those cases where the defendant's conduct has been *extreme and outrageous.*
>
> ' * * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous!" '

*Id.* (emphasis in original, quoting Rest. 2d Torts § 46, comment d, at 73).

Several subsequent Colorado Court of Appeals cases have considered intentional or reckless infliction of emotional distress. Because I must determine whether a particular fact pattern is sufficient to state a claim under this tort, I will summarize the facts of these previous cases.

Three appellate cases upheld jury findings of intentional infliction of emotional distress. In *Enright v. Groves*, 39 Colo.App. 39, 560 P.2d 851, 854 (1977), a scuffle resulted after the defendant police officer wrongfully demanded to see plaintiff's driver's license. The appellate court found the police officer's uncompromising conduct and his handcuffing and propelling of the defendant to be substantial evidence to support the jury's verdict. In *DeCicco v. Trinidad Area Health Association*, 40 Colo.App. 63, 573 P.2d 559, 562 (1977), the defendants refused to furnish the requested ambulance service to plaintiff's wife because her attending physician had recently resigned from the defendant's hospital. The appellate court found that the jury's verdict for the plaintiff was reasonable, because the defendants' action delayed taking a critically ill person to a hospital. In *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399, 400–01 (1978), the defendant, a lawyer, intentionally breached a house sales contract with the plaintiff, who was not sophisticated in legal matters, by refusing to vacate the house by the date required. The defendant also called the plaintiff offensive names, wrongfully threatened court action against her, and then left the house that he had sold to her in a seriously damaged condition. The appellate court noted that any one of these actions would probably not survive a directed-verdict motion, but that together they supported the jury's verdict. 580 P.2d at 401.

One appellate case sustained a trial court judgment in favor of the defendant in an intentional infliction of emotional distress case. In *Paris v. Division of State Compensation Insurance Fund*, Colo.App., 517 P.2d 1353, 1355 (1973), the defendant had sent the plaintiff, a paraplegic, a letter of reprimand, which also stated that his job had been created for him because of his handi-

cap. The appellate court affirmed the trial court's finding that this did not establish a case for intentional infliction of emotional distress.

Four appellate cases affirmed trial courts' dismissing intentional infliction of emotional distress claims before trial. In *Deming v. Kellogg*, 41 Colo.App. 264, 583 P.2d 944, 945–56 (1979), the court affirmed the trial court's dismissal of outrageous conduct claim stemming from an automobile accident. In *Hansen v. Hansen*, 43 Colo. App. 525, 608 P.2d 364, 365–66 (1979), the court affirmed the trial court's granting summary judgment to a defendant sued by her son, who had alleged that plaintiff's failure to support him had caused him severe emotional harm. In *First National Bank in Lamar v. Collins*, Colo.App., 616 P.2d 154, 156 (1980), the plaintiff alleged that one of the defendants had made misrepresentations regarding an associated store that the plaintiff would operate. While the appellate court found that the plaintiff had stated a claim for negligent misrepresentation, it also held that he had not stated a claim for intentional or reckless infliction of emotional distress. Finally, in *Vigoda v. Denver Urban Renewal Authority*, Colo.App., 624 P.2d 895, 898 (1981) (cert. granted by Colorado Supreme Court), the appellate court affirmed the trial court's conclusion that various pre-contract negotiations and actions by the defendant did not state a claim for intentional infliction of emotional distress.

The first four Colorado Court of Appeals cases indicate that the question of whether defendant has caused intentional or reckless infliction of emotional distress is often a question of fact to be determined by trial. The last four cases demonstrate, however, that there is a certain threshold level of conduct that must be established for the plaintiff to state a cause of action. Because all of these cases are based largely on their own facts, it is difficult to ascertain the standards necessary for a cause of action. I do note, however, that there are certain similarities in the cases that have recognized a cause of action. In two, *Rugg v. McCarty* and *Meiter v. Cavanaugh*, there was a pattern of conduct by the defendant that either intentionally or recklessly caused severe emotional distress to the plaintiff. In the other two, *Enright v. Groves* and *DeCicco v. Trinidad Area Health Association*, the plaintiffs' causes of action were predicated on public or quasi-public officials severely abusing their duties and responsibilities. In contrast, the cases finding no cause of action did not involve either patterns of conduct calculated to cause emotional distress or severe abuses of discretion by public officials.

In many, if not most, civil lawsuits the plaintiff believes that the defendant's conduct has been outrageous. Most lawsuits also cause the plaintiff (and often the defendant) emotional stress. Yet very few fact situations give rise to a cognizable claim for intentional infliction of emotional distress. The spate of complaints precipitated by the *Rugg v. McCarty* case which include claims for outrageous conduct tend to make the critical reader think that there is a lot less there than meets the eye.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Rest. 2d, Torts § 46, comment d, at 73. I conclude that claims for intentional infliction of emotional distress will normally only be cognizable in cases where the defendant has engaged in a pattern of conduct that either has intended to cause or recklessly did cause severe emotional distress. While it is possible for a single, isolated activity to be a sufficient basis for a cause of action, it only will be so where a public or quasi-public official has severely abused his discretion or a private individual has blatantly and severely harassed another.

In the present case plaintiff alleges that he had been an employee of the defendant for 33 years and the manager of defendant's Pueblo store for the last 14

years. He then alleges that the defendant "willfully, wantonly, and maliciously fired the [p]laintiff, ... and would not allow him to resign with dignity," and that the defendant intended to cause the plaintiff severe emotional distress. These allegations do not state either a sufficiently outrageous pattern of conduct or a sufficiently outrageous isolated incident. Clearly there is not a sufficient recitation of facts to lead an average member of the community to exclaim, "outrageous." The second and third claims are insufficient to state a claim for extreme and outrageous conduct, and therefore are dismissed.

## III. BREACH OF CONTRACT

[4, 5]  Plaintiff's fourth claim for relief alleges

> That the acts of the Defendant, Sears, constitute a breach of contract.

Defendant moved to dismiss this claim, arguing that no contract, express or implied is alleged in the complaint. Plaintiff responds that C.R.S. § 8–2–116 "created by law" a contract between the plaintiff and the defendant. This argument is without merit. While plaintiff has stated a cause of action under C.R.S. § 8–2–116, that statute does not also create an independent breach-of-contract action unless there was in fact a contract.

F.R.Civ.P. 8(a)(2) requires only that the complaint state

> a short and plain statement of the claim showing that the pleader is entitled to relief.

The plaintiff is thus not required to state all the elements of a particular claim, but only state facts sufficient to give the opposing party fair notice of the claim. See C. Wright & A. Miller, *Federal Practice and Procedure*, § 1218, at 134 (1969). Plaintiff's fourth claim does not give this fair notice and therefore is dismissed.

## IV. PROMISSORY ESTOPPEL

Plaintiff's fifth claim alleges that he relied to his detriment on statements and representations of the defendant and that these acts of the defendant "constitute promissory estoppel, or a breach thereof." Defendant responds that plaintiff has not alleged "any basis sufficient to satisfy the promissory elements of estoppel." In *Mooney v. Craddock*, 35 Colo.App. 20, 530 P.2d 1302, 1305 (1974), the court stated that the doctrine of promissory estoppel

> should be applied to prevent injustice where as here, a promise was made which the promisor should reasonably have expected would induce action or forbearance of a material character and the promise in fact induced such action or forbearance.[4]

Plaintiff's complaint alleges that the defendant "told, promised, and inferred (sic) to the plaintiff that he would have a job with Sears until his retirement." The complaint then alleges that plaintiff did several acts to his detriment in reliance on defendant's representations.[5] This is sufficient to state a claim under the promissory estoppel doctrine.

## V. WRONGFUL DISCHARGE

Plaintiff's sixth claim alleges that the defendant's acts "constitute the tort of wrongful discharge." In *Lampe v. Presbyterian Medical Center*, 41 Colo.App. 465, 590 P.2d 513 (1978), the court held that:

> In the absence of special consideration or an express stipulation as to the duration of employment, an indefinite general hiring is terminable at will by either party.

590 P.2d at 514. The court noted that this rule would not apply if a plaintiff claimed

---

4.  The court cited Rest. Contracts, § 90, which states:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promisee.

5.  These allegations are contained in complaint paragraphs that are not incorporated into the fifth claim for relief. I do not consider this to be a material defect here, where the defendant received notice of the allegations.

that he was discharged for exercising a "specifically enacted right [or] duty," such as the right to file for workmen's compensation or the duty to serve on a jury. 590 P.2d at 515. In this present case, however, plaintiff does not allege that he was fired for exercising any specific right or duty. He therefore does not state a claim for the tort of wrongful discharge.

## IV. REMAINING CLAIMS FOR RELIEF

Plaintiff's seventh and eighth claims allege that defendant's failure to give plaintiff an opportunity to "retire with dignity" constitutes outrageous conduct. For the reasons stated in section II, *supra*, I conclude that these claims should be dismissed.

Plaintiff's ninth claim alleges that defendant's failure to allow him to retire with dignity constitutes breach of contract. For the reasons stated in section III, *supra*, I conclude that this claim should be dismissed.

Plaintiff's tenth claim alleges that defendant's failure to allow him to retire with dignity states a claim for promissory estoppel. While it is not clear how this states any claim beyond that stated in the fifth claim, I conclude, for the reasons set forth in section IV, *supra*, that this claim should not be dismissed.[6]

Plaintiff's eleventh claim alleges that defendant's acts constitute the tort of wrongful discharge. For the reasons stated in section V, *supra*, I conclude that this claim should be dismissed. It is

ORDERED that defendant's motion to dismiss is granted in part and denied in part. Plaintiff's second, third, fourth, sixth, seventh, eighth, ninth and eleventh claims for damages are hereby dismissed. It is further

ORDERED that defendant shall answer plaintiff's remaining claims within ten days of the date of this order.

6. Defendant's brief does not elaborate why the seventh through eleventh claims should be dismissed, but merely states,

To the extent that Plaintiff's Seventh through Eleventh Claims fail to state a claim for relief based on the grounds discussed above, those claims should also be dismissed.