Lana R. SIMMONS, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, Sherwood Enterprises, Inc., a Colorado corporation, and Steve R. Hewson, Defendants.

Civ. A. No. 84–K–2033.

United States District Court, D. Colorado.

Aug. 15, 1986.

Robert Bruce Miller, Miller, Hale and Harrison, Boulder, Colo., for plaintiff.

Alan Gary Dunn, Hall, Singer and Dunn, Denver, Colo., for defendants.

## ORDER

KANE, District Judge.

### BACKGROUND

This case presents the issue of the preemptive effect of ERISA on several state claims brought in connection with a stop-loss type employee benefit plan. The suit arises out of Prudential Insurance Co.'s alleged mishandling of the claims of an employee of Sherwood Enterprises. Plaintiff seeks damages as a result of her contention that Prudential violated its contractual and statutory duties of good faith and fair dealing, breached the provisions of the policy of insurance; that it conducted itself in an outrageous manner; violated the provisions of the Colorado Unfair Claims Practice Act, C.R.S. § 10–3–1101 et

seq.; and defamed plaintiff. Plaintiff brings additional counts against defendants Sherwood and Steve Hewson, administrator of Sherwood's Employee Benefit Plan, for violation of their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1104.

The case is before me after having been removed by defendants on the basis of federal question jurisdiction. The present order pertains to defendants motion for partial summary judgment. Defendants seek judgment on all of plaintiff's claims for damages, contending that ERISA preempts all of plaintiff's state law claims; that plaintiff's claim against Sherwood and Hewson is disallowed under ERISA; that plaintiff's claims based on violation of C.R.S. § 10-3-1101 et seq. cannot be maintained and that Prudential's conduct does not, as a matter of law warrant award for outrageous conduct, defamation or for punitive damages.

While an employee at Sherwood Enterprises, plaintiff was covered for certain medical expenses pursuant to the company's "employee welfare benefits plan" and Group Policy GO-89229 issued by defendant, Prudential, to Sherwood as the group policy holder/employer. The mechanics of the coverage were those of what has come to be called a "stop-loss" plan. Defendant, Sherwood was obligated to pay eligible claims up to a "yearly maximum," at which point insurance provided by Prudential was to take over. Prudential also provided claims management services including tasks such as coverage determination for all claims. On May 16, 1983, plaintiff's daughter, Erin Popino, became afflicted with diabetic ketoacidosis and other complications. The medical bills from this illness exceed $75,000.00 and have been submitted to defendant under the Employee Benefit Plan and Group Policy. Prudential commenced processing the claims and initially refused eligibility pursuant to the policy. Later, it recanted its refusal and to date the sum of $71,852.23 has been paid under the plan for medical expenses related to Erin Poplin's illness.

## STANDARDS FOR DECISION

Summary judgment, pursuant to Fed.R. Civ.P. 56(c) is a drastic remedy, *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir.1973), by which movants are given the opportunity to pierce the allegations in the pleadings. However, "[t]he power to pierce the flimsy transparent factual veil should be temperately and cautiously used lest abuse reap nullification." *Avrick v. Rockmont Envelope Co.*, 155 F.2d 568, 571 (10th Cir. 1946). Summary judgment is appropriate only where there exists no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1383 (10th Cir.1980). As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980).

In order to determine the propriety of summary judgment I must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made. Id.; *United States, etc. v. Santa Fe Engineers, Inc.*, 515 F.Supp. 512 (D.Colo.1981), *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980); *Commercial Iron & Metal Co. v. Bache & Co.*, 478 F.2d 39 (10th Cir.1973). Summary judgment is not a substitute trial by affidavit. *Ando v. Great Western Sugar Co.*, 475 F.2d 531 (10th Cir.1973). Under the rule, no margin exists for disposition of factual issues. It does not serve as a substitute trial of the case nor require the parties to dispose of the litigation through affidavits. *Commercial Iron & Metal Co. v. Bache & Co.*, 478 F2d. at 41. Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Romero v. Union Pac. Railroad*, 615 F.2d 1303, 1309 (10th Cir.1980).

## ERISA: PREEMPTION OF STATE CLAIMS

In 1974, Congress perceived a problem with private employee benefit plans. In

that year the lawmakers passed comprehensive legislation intended to remedy the growing inadequacy and nonconformity of those plans and afford the security and stability of regulation that attends federal legislation. To those ends, the Employee Retirement Income Security Act (ERISA) includes a broad preemption clause, removing the task of regulating employee benefit plans from the hands of the several states, and into those of the federal government. The defendants have moved for summary judgment on the issue of preemption. I must decide whether that preemption provision is broad enough to disallow plaintiff's state law causes of action which flow from Prudential's claim processing under an ERISA regulated benefit plan.

In light of my recent decision in *Munoz v. Prudential Ins. Co. of America*, 633 F.Supp. 564 (D.C.Colo.1986), the first step in deciding the question of ERISA preemption is to determine whether ERISA will apply to Prudential's conduct. A person or entity is subject to regulation under ERISA only if he may be characterised as a fiduciary with respect to an employee benefit plan. Non-fiduciaries are not so regulated, and accordingly ERISA will not preempt state law claims against a non-fiduciary. *Munoz*, 633 F.Supp. at 570. ERISA provisions, including those on preemption, apply to the conduct of fiduciaries.

Unlike its role in *Munoz*, there is no question here that Prudential is a fiduciary with respect to Sherwood's plan. "Fiduciary" is specifically defined in ERISA. Determination of a party's fiduciary capacity rests heavily upon the amount of discretion it may employ in carrying out its contractual obligations.[1] Prudential's latitude and discretion in claims procedures bring it within the ambit of the fiduciary class. Prudential's own policies and procedures were followed in evaluating plaintiff's

claims. Further, it was Prudential's choice as to which claims were accepted, and which were not. In *Munoz*, Prudential's contractual duties were substantially different. It was obligated to perform only the role of administrator of another entity's policies and procedures. In this case, as distinguished from *Munoz*, since Prudential is a plan fiduciary, it's role with respect to the plan must be analysed in light of each ERISA clause relating to preemption. Only then may a determination of plaintiff's state law claims be made.

## THRESHOLD PREEMPTION

The relevant ERISA provision, § 1144, describes a very broad framework of preemption. Subsection (a) provides that all state laws are superseded insofar as they "relate to" any employee benefit plan. 29 U.S.C. § 1144(a) (1982). The chosen language of the clause is quite vague. It is well settled, however, that Congress intended it to be so.

The initial question with respect to preemption, is whether the plaintiff's state law claims, founded in tort, and general in application, "relate to" employee benefit plans. The answer must be that they do. The case of *Hood v. Prudential Ins. Co. of America*, 460 So.2d 1227 (Ala.1984) is cited by plaintiffs as being "on all fours" with the present action, holding that state tort claims do not "relate to" employee benefit plans and are therefore not preempted by § 1144(a). I cannot adopt that interpretation in the face of over-whelming opinion to the contrary. The prevailing view is that Congress intended its preemption provision to embrace all state law claims. 29 U.S.C. § 1144(c)(1); *Powell v. Chesapeake and Potomac Telephone Company of Virginia et al.*, 780 F.2d 419 (4th Cir.1985). The breadth of federal preemption was noted

---

1. "Fiduciary" is defined specifically within the text of ERISA at 29 U.S.C. § 1002(21)(A). Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this article.

by the Supreme Court when it held that a state law relates to an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). It is difficult to imagine a situation arising out of a claim under an employee benefit plan invoking a state law, which would fall outside this definition. Indeed, claims such as those invoked in the case at bar have consistently been held to meet the requisites for threshold preemption under ERISA. *Powell; Massachusetts Mutual Life Insurance Company, et al., v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Eversole v. Metropolitan Life Insurance Co., Inc.,* 500 F.Supp. 1162 (C.D.Cal.1980). The case of *Hood v. Prudential Ins. Co.,* seems to be the aberration, not the rule. Accordingly, plaintiff's state law claims fall within § 1144(a)(2) of ERISA. However, the story does not end here.

SAVINGS CLAUSE

The general preemption provision of § 1144(a)(2) is modified by § 1144(b)(2)(A), the savings clause. Congressional intent with respect to this clause is clear as well. Here, the lawmakers wished to preserve for the states the traditional role of insurance regulator as established by the McCarran-Ferguson Act (Act). *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Section 1144(b)(2)(A) provides, "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking or securities."

■ Having resolved that state law tort claims indeed relate to an employee benefit plan, and therefore are initially preempted by § 1144(a), I must decide whether the tort laws are laws which regulate insurance and are excepted from preemption by the savings clause. In answering this question, the main point to keep in mind is that plaintiff, Simmons, has pursued no state law claim against the plan, or her employer. She permissibly chose to assert a claim against Sherwood and Hewson under ERISA provisions only. The state law claims of insuror bad faith, breach of contract, outrageous conduct, negligence and defamation are asserted against Prudential and no one else.

Both parties debate in detail the question of Prudential's classification as an insurance company under this particular stop-loss benefit plan. Defendants argue that an insurance company involved with a stop-loss plan should be analogized to an insurance company under a self-insured plan, especially in light of these circumstances, wherein Prudential contributed no pecuniary benefits to plaintiff. The $50,000 primary limit has yet to be reached. In self insured plans, the insuror acts only in an administrative capacity, and is under no obligation to pay benefits in the event of a loss. Consistently courts have refused to allow the savings clause to shelter these state law claims from ERISA preemption. *Russell v. Massachusetts Mutual Life Ins. Co.,* 722 F.2d 482 (9th Cir.1983) rev'd on other grounds, —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.1981); *Powell.* Plaintiff argues the opposite. She compares the stop-loss plan to fully insured plans in which insurors have consistently been held subject to state tort law claims, the claims themselves preserved under the savings clause of ERISA. *Metropolitan Life Ins. Co. v. Massachusetts; Dedeaux v. Pilot Life Ins., Co.,* 770 F.2d 1311 (5th Cir.1985); *Eversole v. Metropolitan Life Ins., Co.,* 500 F.Supp. 1162 (D.C.Cal.1980). Until quite recently, the precise question of stop-loss plans has been left undetermined. In light of recent developments in case law, I am of the opinion that Prudential must be considered an insuror in this case, despite the "excess" nature of its coverage and the fact that at no time were the underlying limits of coverage exhausted.

In support of its motion for summary judgment on the issue of preemption, defendants point to a recent Ninth Circuit decision, *Moore v. Provident Life and Ac-*

*cident Ins. Co.,* 786 F.2d 922 (9th Cir.1986) in which Provident Insurance provided insurance to the trust fund (plan) only when claims exceeded a certain limit. The plan chose to adopt the terms and provisions of a Provident group policy as its own self-funded insurance plan, but did not buy the policy from Provident. According to a separate agreement, while not actually paying claims, Provident acted in an administrative capacity for the plan by processing claims. The Ninth Circuit in the *Moore* case held that Provident was acting not in the capacity of an insuror, but as an administrator only, since no funds were paid directly to plaintiff, and the insurance contract was between the plan and Provident, for the sole benefit of the plan. Plaintiff had no part or interest.

In *Moore,* there is no indication that a group health plan was ever bought from Provident to benefit would-be claimants directly. Rather, a separate policy was supplied directly to and for the benefit of the plan. Provident insured the plan. Although at first blush Moore seems similar factually to the case at bar, it must be distinguished. Sherwood, in this action, bought a group insurance policy from Prudential, on behalf of the employees. See Third Amended Complaint, p. 2. The policy was bought, premiums were paid, all for the benefit of the future beneficiaries. There can be no doubt that Prudential must be considered to have been engaged in the business of insurance at this point.

The case of *Michigan United Food and Commercial Workers v. Baerwaldt,* 767 F.2d 308 (6th Cir.1985) answers the same question. According to that plaintiff's description, the plans pay premiums to Occidental to insure that Occidental will pay all benefits in excess of the claims liability limit under the group policies. The court decided to preserve state law claims from preemption under § 1144(a)(2), by use of the savings clause. It later stated that the stop-loss nature of the plan did not alter its conclusion. The decision in *Baerwaldt* addresses the issue here more precisely. I will follow it.

An analogy of the excess insuror or secondary umbrella coverage in general property loss coverage is useful. Though the excess insuror has no duty to pay benefits until primary coverage is exhausted, it may participate in certain administrative matters before exhaustion of primary limits. It is universally considered an insuror for all purposes, including fiduciary capacities. Similarly, Prudential was not obligated to pay benefits on its Group Insurance Plan until Sherwood's limits were exhausted. In this case, Prudential paid none. Yet premiums were paid to ensure excess coverage as well as certain administrative duties to be carried out by Prudential on behalf of the plan. Thus, the stop-loss nature of the employee benefit plan may not change the conclusion that would be drawn if the plan were fully insured. Prudential acts as an insuror under the plan and can be regulated in that manner, by the states.

The next question to be answered, knowing that Prudential is acting as an insurance company, is whether the state laws regulating the conduct of insurance companies are necessarily laws which regulate insurance. I hold they are. All of plaintiff's state law claims are based upon her relationship with her insuror, Prudential, and their interpretation and processing of her claims. This relationship and interpretation between insuror and insured is the core of the business of insurance. "Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating ... insurance." *Eversole,* citing *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

Thus, the state law tort claims against defendant Prudential are laws regulating insurance. As such, though encompassed by § 1144(a) initially, they are exempted by the savings clause, § 1144(b)(2)(A). Defendants motion for summary judgment as to preemption of plaintiff's state law claims is accordingly denied.

### ERISA: EXTRA–CONTRACTUAL AND PUNITIVE DAMAGES

Plaintiff Simmons asserts one claim under the authority of ERISA. That claim is

against Sherwood and Hewson. It arises out of the same facts involving Erin Popino's illness. Plaintiff alleges that as fiduciaries under ERISA, defendants Sherwood and Hewson owed plaintiff a duty of care as outlined by 29 U.S.C. § 1104, a duty which they each allegedly breached. Plaintiff's remaining seven claims for relief are brought against Prudential and involve only state causes of action. Those causes are not preempted by the federal act. Likewise, they are not subject to any limitations on extra-contractual or punitive damages as set forth in ERISA. Therefore I deal only with the single claim brought against Sherwood and Hewson in determining availability of extra-contractual and punitive damages under ERISA.

Both plaintiff and defendants argue in their respective briefs that I should adopt each party's own particular interpretation of a recent Supreme court opinion, *Massachusetts Mutual Life Ins. Co., et al. v. Russell*, to resolve the issue at bar. The *Russell* case sprung from the claim of a beneficiary of an employee benefit plan who brought an action to recover damages, inter alia, for improper processing of her claim for disability benefits. The problem was much the same as that faced today. The *Russell* case has a majority opinion and a strong and wide ranging concurrence by three justices whose ideas on the subject overstepped the precise question before the court.

■ Plaintiff in this case brings her claim against defendants based on an alleged breach of the fiduciaries' standard of care toward beneficiaries that is set forth in § 1104 of ERISA. The pertinent portions of that section provide as follows:

29 U.S.C. § 1104(1)(A)(i): Subject to sections 1103(c) and (d), 1342 and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Thus, § 1104 establishes only the standard of care to be carried out by fiduciaries under ERISA controlled employee benefit plans. It alone does not expressly authorize a private civil right of action. For that, one must look elsewhere in ERISA. Section 1132 provides for civil enforcement of the duties of § 1104. It states in pertinent part:

A civil action may be brought....

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations of (ii) to enforce any provisions of this subchapter or the terms of the plan.

Thus, § 1104 provides the standard and § 1132 the method of enforcement. Significantly, neither of these statutory provisions says anything about the recovery of extra-contractual or punitive damages, though they easily could if Congress had so wished. There is nothing at all in the statutory text to support the conclusion that any fiduciary's act or breach will give rise to a private right of action for compensatory or punitive relief.

Plaintiff also argues that a private right of action for monetary relief should be inferred by the court, using the test set forth in *Cort v. Ash*. In order to pass this test, four criteria must be met. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

(1) The plaintiff must be one of the class for whose benefit the statute was enacted.

(2) There must be some indication of legislative intent, explicit or implicit to create such a remedy, and no evidence of intent to deny one.

(3) It must be consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

(4) The cause of action must be one traditionally relegated to state law, in an area basically the concern of the states so that it would be inappropriate to infer a cause of action based soley on federal law.

Without doubt, the first criterion is met. Plaintiff, as a beneficiary of the plan is of the class intended to benefit from the legislation. The fourth criterion is met as well, in view of the clear preemptive effect of ERISA in regard to plan fiduciaries such as Sherwood and Hewson. The problems lie with application of the second and third criteria.

The second criterion involves legislative intent. Ascertaining legislative intent is never easy. It seems to be a rather subjective task. Here, if I were to allow extra-contractual or punitive relief to be implied in § 1104, it would be reading meaning into a statute instead of studying congressional intent to determine meaning reposed in the statute. It is the difference between eisegesis in the former exercise and exegesis in the latter.

Nowhere in the legislative history does the express wish to include such a monetary remedy as an ERISA option surface. (Of course no such language was included within the language of the statute either.) Plaintiff suggests Senator Williams' remarks likening suits involving beneficiaries rights under ERISA to those brought under § 301 of the LMRA (Labor Management and Relations Act) are evidence of Congress' intent to supply a monetary remedy under ERISA. 120 Cong.Rec. 29933 (1974). Senator Williams' remarks are insufficient to infer that Congress intended to provide extra-contractual or punitive remedies in ERISA. This is especially true in the face of the stark absence of any

language authorizing such a remedy in the statutory standard of care provision (§ 1104) or the civil enforcement provision (§ 1132). It is important to note that later in Senator Williams' remarks, while discussing the administration and enforcement of the Act's provisions, the Senator speaks only of those remedies available to the beneficiary that are specifically outlined in the Act. He says nothing in regard to a remedy for extra-contractual or punitive damages. I cannot make the bare inference that he meant to do otherwise. Statement of the Honorable Harrison A. Williams, Jr., 120 Cong.Rec. S–15737, Aug. 22, 1974, reprinted [1974] U.S.Code Cong. & Admin.News pp. 5187–5188.

Plaintiff also argues the civil remedy provisions of ERISA are to be likened to the common law of trusts. Since the common law of trusts allows monetary relief, so should ERISA. Plaintiff's argument is misplaced. It is true the standard of care outlined in § 1104 is to be interpreted under principles applicable to trustees under the common law of trusts, with a view toward establishing uniform standards. *Marshall v. Teamsters Local 282 Pension Trust Fund,* 458 F.Supp. 986 (D.C.N.Y. 1978). Plaintiff argues this means the measure of damages should be analogous to the common law of trusts as well. No indication for such a finding exists, especially in the absence of any specific statutory authorization of it. The statutory text is very detailed and thorough in outlining strict fiduciary obligations. The application of the law of trusts in this regard is made quite clear in the legislative history. The case is not the same with regard to enforcement and remedies. In view of the pertinent legislative history, and the statutory text itself, I find Congress' only application of the law of trusts is in reference to the fiduciary standard of care.[2] The mea-

---

**2.** In addition, plaintiff's argument with reference to trust law is misplaced for reasons outside of the interpretation of the Act itself. Even assuming that Congress had intended to include all traditional trust remedies within the scope of ERISA relief, extra-contractual or punitive relief is generally not available in an action by a

beneficiary against a trustee for breach of trust. *Powell v. Chesapeake and Potomac Telephone Company of Virginia,* 780 F.2d 419 (4th Cir., 1985). *See also,* Restatement (Second) of Trusts § 205 (1959) (liability for breach of trust is limited to (a) loss in value of trust estate; (b)

sure and type of damages are still to be found under §§ 409 and 502. Within those sections, there is no express grant of punitive or extra-contractual relief. As discussed above, none may be implied under *Cort v. Ash.*

That the plain language of any statute must control when unambiguous is a concept too familiar to dote upon. Section 502 authorizes only equitable recovery by a beneficiary. Equitable remedies are generally held to exclude extra-contractual and punitive damages. I cannot infer a congressional intent to include money damages when Congress, in the course of framing the comprehensive remedial body within ERISA, could easily have chosen to provide for them expressly, but declined. Defendant's motion for summary judgment disallowing extra-contractual and punitive damages is accordingly granted.

## OUTRAGEOUS CONDUCT

Defendants next contend that summary judgment ought to be granted on plaintiff's outrageous conduct claims. Plaintiff brings two claims for relief for outrageous conduct against, defendant, Prudential. In her third cause of action she alleges Prudential's conduct was so extreme and outrageous as to go beyond all possible bonds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. In her fourth claim for relief, plaintiff brings an action for outrageous conduct based on a single incident in which alleged agents of Prudential intruded upon her daughter's therapy room and demanded to know whether the therapy was necessary. For the following reasons, I find that defendant's motion for summary judgment must be denied on both claims.

◼ The question of whether certain conduct is outrageous is ordinarily a question for the trier of fact, *Enright v. Groves,* 39 Colo.App. 39, 560 P.2d 851 (1977), it is for the court to determine, in the first instance, whether reasonable persons could differ on the outrageous conduct issue. *First National Bank v. Collins,* 44 Colo.App. 228, 616 P.2d 154 (1980); see Restatment (Second) of Torts § 46 comment h. In *Rawson v. Sears Roebuck Co.,* 530 F.Supp. 776, 780 (D.Colo.1982), I determined that there is a certain threshold level of conduct that must first be established for plaintiff to state a cause of action for outrageous conduct. To meet this threshold, plaintiff must allege either that: 1) defendant has engaged in a pattern of conduct that was intended to cause or recklessly did cause severe emotional distress, or 2) if the incident is isolated, defendant blatantly and severely harassed plaintiff. *Id.; Bresinski v. Woolworth,* 626 F.Supp. 240, (D.Colo.1986). Defendants have failed to prove as a matter of law that the totality of Prudential's conduct alleged by Plaintiff does not meet this threshold.

◼ It has been recognized that the adhesion aspects of an insurance policy and resulting lack of bargaining power of the insured implies a special relationship between the insurer and the insured.[3] *Hiatt v. Schreiber,* 599 F.Supp. 1142 (D.C.Colo. 1984); *Egan v. Mutual of Omaha Insurance Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). Such a special relationship compels a heightened standard of care from the normal arms-length contract. By obtaining insurance, an insured seeks to obtain some measure of financial security and protection against calamity, rather than to secure commercial advantage. *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138, 1141 (Colo.1984). The only means by

profits accrued by trustee; or (c) profits lost to estate).

**3.** In *Travelers v. Savio,* 706 P.2d 1258 (Colo. 1985) the Colorado Supreme Court restricted application of a quasi-fiduciary relationship to third party situations when considering a bad faith breach of contract claim. A third-party case exists when an insurer is obligated to defend the insured against an injured third party. First-party or "direct" coverage involves insurance policies covering injuries of the insured as with worker compensation or medical and health insurance. The distinction between third and first party insurance contracts does not affect my discussion above.

which an insured can directly influence the insurer's claim evaluation process is by filing a civil action to compel performance or for damages; an intimidating and costly prospect. The obvious disparity in bargaining positions justifies a higher standard of care in evaluating an outrageous conduct claim. I find that Prudential's conduct could be regarded as outrageous when considering this higher standard.

In addition, Prudential's conduct may be regarded as outrageous in view of the vulnerable mental condition of the insured. The Restatement (Second) of Torts § 46 comment f states an actor's knowledge that the other person is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity may render the conduct extreme and outrageous. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge. Once a calamity has befallen an insured covered under a private insurance contract, the injured party is particularly vulnerable because of the injury or loss. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985). Plaintiff sufficiently alleges such mental condition.

A motion for summary judgment requires me to resolve all doubts as to whether a genuine issue of material fact exists against the moving party. For the above reasons and from my evaluation of the totality of plaintiff's allegations, I conclude that reasonable persons could differ on the question whether Prudential's conduct was outrageous. In regard to Plaintiff's fourth claim for relief, I find that factual disputes remain for resolution barring summary judgment. Summary judgment is, therefore, denied as to Plaintiff's third and fourth claims.

**4.** The Colorado Supreme Court has twice denied cert. on this precise issue. See *Farmer's Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984) and *Appel v. Sentry Life Ins. Co.,* 701 P.2d 634 (Colo. App.1985).

**5.** Although the Unfair Competition—Deceptive Practices Act will not support a claim for negli-

## NEGLIGENCE PER SE

Next defendants contend that plaintiff's sixth claim for relief should be dismissed as a matter of law because Colorado's Unfair Competition-Deceptive Practices Act, C.R.S. § 10–3–1101 et seq, (1973), precludes a private right of civil remedy for its breach and will not support an action for negligence per se. I agree. The Colorado Supreme Court has yet to deal with the issue of whether C.R.S. § 10–3–1101, et seq, (1973) will support a private right of action.[4] The Colorado Court of Appeals, however, has explicitly refused to recognize a private right of action pursuant to C.R.S. § 10–3–1101. *Farmer's Group, Inc., v. Trimble,* 658 P.2d 1370 (Colo.App. 1982) affirmed 691 P.2d 1138 (Colo.1984); *Appel v. Sentry Life Insurance Co.,* 701 P.2d 634 (Colo.App.1985) cert. granted (Colo.1985).[5]

In absence of a definitive ruling from a state's highest court, a federal court exercising pendent jurisdiction must attempt to anticipate how that highest court would rule on a specific question of law. "[A] federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise." *Delano v. Kitch,* 663 F.2d 990, 996 (10th Cir.1981) cert. denied, 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982); see also *Comm'r of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); 19 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 4507 (1982). I see no reason the Colorado Supreme Court would rule differently than the Court of Appeals. Therefore, defendants motion for summary judgment in regard to plaintiff's sixth claim for relief is granted.

gence per se, a court may still use the statute as indicitive of a standard of care on an independent negligence claim. *Dare v. Sobule,* 674 P.2d 960 (Colo.1984); Restatement of Torts, (Second) § 286. In the present case, plaintiff has alleged only a claim of negligence per se.

## EXEMPLARY DAMAGES

Defendants contend that plaintiff's factual allegations in support of punitive damages cannot be characterized as willful and/or malicious or rise to the level of fraud, malice, insult or wanton and reckless conduct required by statute. For the reasons that follow, I hold that defendant is not entitled to summary disposition.

The question of the sufficiency of evidence to justify an award of exemplary damages is one of law. *Mince v. Butters*, 200 Colo. 501, 616 P.2d 127 (1980). In resolving this question, a court must view the evidence in the light most favorable to the party against whom the motion is directed. *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 215 (Colo.1986).

■ The Colorado Supreme Court has defined wanton and reckless disregard in the context of exemplary damages as involving "conduct that creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences." *Tri-Aspen Construction Co. v. Johnson*, 714 P.2d 484 (Colo.1986) citing *Palmer v. A.H. Robins Co.*, 684 P.2d at 187. In view of the Colorado standard for willful and wanton behavior, Plaintiff's allegations sufficiently support a claim for exemplary damages.

Further, I noted in *Hiatt v. Schreiber*, 599 F.Supp. 1142, (D.Colo.1984) that the Colorado Court of Appeals has implicitly acknowledged that punitive damages are recoverable in suits for bad faith breach of insurance contracts. See *Frick v. Abell*, 198 Colo. 508, 602 P.2d 852 (1979). Accordingly, defendants have not shown that they are entitled, as a matter of law, to summary judgment; therefore, summary relief on plaintiff's second claim is denied.

## LIBEL AND SLANDER

Plaintiff brings an action for libel and slander in reference to an alleged statement made by an unknown employee of Prudential to a representative of Phyliss Yates and Assoc., assignee of Boulder Memorial Hospital to the effect that plaintiff "pocketed insurance funds earmarked for payment to the hospital." A second claim regards defendant Prudential's letters to Boulder Memorial Hospital stating that certain of plaintiffs claims were ineligible for coverage pursuant to the plan. It is Simmon's contention that these writings and statements state a cause of action for slander per se or slander per quod. Defendant has moved for summary judgement on the grounds that the elements for these charges are not met by plaintiff's allegations and that the claims for slander must accordingly be dismissed.

■ Slander is actionable in Colorado without proof of special damages only in certain instances. If the contested statement (1) imputes a crime or criminal offense to plaintiff, or; (2) affects plaintiff's credit and financial reputation by imputing financial difficulty or dishonesty, the statement constitutes slander per se, and is actionable without proof of special damages. *Cinquanta v. Burdett*, 154 Colo. 37, 388 P.2d 779 (1963).

■ Plaintiff asserts that the statement allegedly made by a Prudential employee that plaintiff had "pocketed" insurance funds constitutes slander per se. Clearly, "pocketing" ones own insurance money does not constitute a crime in Colorado. The funds were properly distributed to plaintiff; they then became her own property, and the manner of their disposition, whatever else it may be, is not a concern of the state or this court.

The second instance in which to find slander per se is if the statement affects plaintiff's credit or financial reputation by imputing financial difficulty or dishonesty. The statement that plaintiff had independantly consumed her own insurance proceeds does not qualify. The most that may be taken from the utterance is that plaintiff had possession of the insurance funds, and the hospital would be forced to look to her for further payment. Plaintiff has shown no other meaning that could be drawn from the statement. Thus it may not be considered slanderous. Further, the

charge that plaintiff "pocketed" the insurance funds did not impute a general charge of dishonesty, but rather was spoken in reference to one particular instance. As such it is not actionable. *Cinquanta.* Summary judgment is granted with respect to this statement on this issue.

Defendant's motion for summary judgment is granted as well in respect to the written statements of defendants to Boulder Memorial Hospital, that certain of plaintiff's claims were ineligible pursuant to the policy. The letters contain defendant's opinions as to the eligibility of plaintiff's claims.

 Accepted as law in Colorado, the Restatement (Second) of Torts § 566 (1976) reads: "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis of the opinion." Comment C to this section states that "a simple expression of opinion based on disclosed or assumed non-defamatory facts is not itself sufficient for an action of defamation, *no matter how unjustified and unreasonable the opinion may be or how derogatory it is.*" (Emphasis added.)

It is defendant's occupation and contractual duty to decide, in it's opinion which claims are eligible under the plan, and which are not. It is hoped, of course, that this will be done with the utmost care; however even the highest degree of negligence in preparing these opinions cannot alter their nature as opinions. The letters were based on disclosed, non-defamatory facts, i.e. policy exclusions and the facts of Erin's sickness and hospitalization as relayed to defendant by various personnel, including plaintiff.

 An erroneous opinion is constitutionally protected and cannot be the subject of a defamation action. *Bucher v. Roberts,* 198 Colo. 1, 595 P.2d 239 (1979). It does not matter whether the issue is slander per se or per quod. As well, the question is not whether the opinions are defamatory, but rather whether they are indeed opinions, and thus protected. Determination of this is a question of law to be determined on summary judgment. *Old Dominion Branch No. 496, National Association of Letter Carriers, AFL–CIO v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974).

 Defendant's letters and their contents can be characterized as no more than Prudential's opinions as to plaintiff's claim for eligibility. Such opinions being based on disclosed non-defamatory facts do not constitute slander. Defendant's motion for summary judgment is accordingly granted. Because of my determination in this regard, the question of special damages need not be addressed.

IT IS THEREFORE ORDERED THAT:

Defendant's motion for summary judgment that:

1. Plaintiff's state law claims be dismissed because of preemption is DENIED;

2. Plaintiff's claim for extra-contractual compensation and punitive damages under ERISA be dismissed is GRANTED;

3. Plaintiff's private right of action pursuant to C.R.S. § 10–3–1101, et seq., be dismissed is GRANTED;

4. Plaintiff's outrageous conduct claims be dismissed is DENIED;

5. Plaintiff's claim for exemplary or punitive damages be dismissed is DENIED.

6. Plaintiff's claim for libel and slander be dismissed is GRANTED.