Arthur D. SCHULTZ and Dorothy
Schultz, Plaintiffs,

v.

ALLSTATE INSURANCE
COMPANY, Defendant.

Civ. A. No. 89–N–2048.

United States District Court,
D. Colorado.

May 16, 1991.

Anthony J. Durrett, Glenwood Springs, Colo., for plaintiffs.

Robert A. Zupkus, Stefan Kazmierski, Zupkus & Ayd, P.C., Denver, Colo., for defendant.

### MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

Arthur D. Schultz and Dorothy Schultz, husband and wife, filed this lawsuit against Allstate Insurance Company because of Allstate's denial of insurance benefits allegedly payable under the personal injury protection (PIP) provisions of the Colorado Auto Accident Reparations Act, Colo.Rev. Stat. §§ 10–4–701 to –723 (1987 Repl.Vol.) (the "no-fault" law). Arthur Schultz slipped and fell at a parking lot in Glenwood Springs, Colorado, and sought coverage from Allstate, his automobile insurance carrier, for the injuries sustained. After an initial period characterized by confusion and hesitation on the part of Allstate—during which Allstate at first thought it should provide coverage and actually started to pay benefits—Allstate denied coverage on several grounds, the primary one being its contention that Mr. Schultz's accident occurred during the course of his employment and that his employer's workmen's compensation carrier should provide primary coverage. The Schultzes now claim that Allstate: (1) breached its duty to deal with them fairly and in good faith; (2) breached its insurance contract and violated the no-fault law by refusing to pay

benefits; (3) breached its fiduciary duty; and (4) intentionally inflicted emotional distress on both of them by refusing to pay benefits and thus causing them to incur substantial debt and general damage to their credit rating. The Schultzes seek actual and exemplary damages, interest, and attorney fees.

The matter is now before the court on Allstate's motion for summary judgment on all claims. Allstate advances four arguments. First, Mr. Schultz must exhaust whatever remedies he may have under the workmen's compensation laws before asserting a claim for PIP benefits. Second, Colorado law recognizes no fiduciary duty between the insurer and the insured in these circumstances. Third, there is insufficient evidence to support the claim for intentional infliction of emotional distress. Fourth, Mr. Schultz's claim for lost wages is improper.

## FACTS

In 1988 Mr. Schultz sold his business (seal coating of parking lots) to GMCO, a paving and construction corporation located in Carbondale, Colorado. After the sale Schultz continued to work for GMCO as a sales manager, selling parking lot maintenance services. He regularly used own his car to make sales calls. On August 31, 1988, Schultz drove his car from the GMCO office in Carbondale to Vail, Colorado, to check on a parking lot job. While traveling down Grand Avenue in Glenwood Springs, on the direct route from Carbondale to Vail, he stopped at a drugstore along the avenue to pick up a prescription for his sister-in-law. The accident, which is the subject of the PIP claim, occurred as Schultz got out of the car. He slipped in the drugstore parking lot, injuring himself.

Schultz subsequently inquired of his employer and Allstate concerning the availability of workmen's compensation benefits. GMCO and Allstate both responded that, since the accident appeared to have occurred while Schultz was running a personal errand, workmen's compensation was not available. Consequently, Allstate initially determined that it would be the pri-

mary insurance carrier. *Plaintiff's Brief in Opposition to Summary Judgment,* Exhibit A at 14.

## ANALYSIS

### I. Workmen's Compensation

■ The pertinent part of the Colorado Auto Accident Reparations Act provides as follows:

> When a person injured is a person for whom *benefits are required to be paid* under the "Workers' Compensation Act of Colorado", the coverage described in section 10-4-706(1)(b) to (1)(e) [sub-sections which include provision for payment of PIP benefits] *shall be reduced* to the extent that benefits are actually available and covered under said act within the time period for payment of benefits under this part 7 prescribed by section 10-4-708.

Colo.Rev.Stat. § 10-4-707(5) (1990 Supp.) (emphasis supplied). Under this sub-section, which appears among several sub-sections defining those sorts of insurance coverage which are regarded as "primary" and those which are regarded as "excess," any coverage provided pursuant to the Workmen's Compensation Act must be regarded as primary coverage, since PIP benefits must be reduced by amounts actually available under the Workmen's Compensation Act. Apparently conceding this much, plaintiffs argue that workmen's compensation benefits are clearly not available, since Mr. Schultz was not acting within the scope of his employment when he was injured. Allstate replies that Mr. Schultz was within the scope of his employment and that, in any event, he must present his claim through the state workmen's compensation system before seeking PIP benefits. Plaintiffs' rejoinder is that Mr. Schultz had no duty to pursue a workmen's compensation claim and that requiring PIP claimants to exhaust remedies under the workmen's compensation laws will lead to unwarranted delay in payment of PIP claims and to an increase in the filing of unmeritorious workmen's compensation claims.

In sorting through the parties' contentions, I note initially that the availability of workmen's compensation benefits is ultimately a question to be determined by a Colorado administrative law hearing officer, not by this court. *See* Colo.Rev. Stat. § 8–53–101 (1986 Repl.Vol.).* Obviously, such benefits can become available only if a claimant seeks them, and the only issue which I must now determine is whether Mr. Schultz was obliged to seek them before trying to recover PIP benefits. I hold that, where the facts before the court reveal a basis for reasoned argument that workmen's compensation benefits may be available to a plaintiff, the Colorado Auto Accident Reparations Act requires that the plaintiff seek such benefits before suing for PIP benefits.

As noted, section 10–4–707(5) of the Colorado Auto Accident Reparations Act reflects a legislative determination that, between the workmen's compensation system and the no-fault scheme under which PIP benefits are payable, the workmen's compensation system is to provide primary coverage for claimants' injuries. A court would frustrate this determination if it permitted every claimant the option of ignoring the workmen's compensation system and electing instead to seek PIP benefits. Contrary to plaintiff's assertion, this does not imply the converse—that every claimant must pursue a workmen's compensation action, no matter how frivolous, before bringing a claim for PIP benefits. The legislature's determination is adequately served if the court makes a threshold decision concerning the availability of workmen's compensation coverage and requires pursuit of the workmen's compensation claim only where the facts and the law reveal a reasoned basis for it. I therefore turn to that threshold decision.

The conditions for recovery of workmen's compensation benefits are as follows:

The right to the compensation provided for in articles 40 to 54 of this title [Workmen's Compensation Act], in lieu of any other liability to any person for any personal injury or death resulting therefrom, shall obtain in all cases where the following conditions occur:

. . . . .

(b) Where, at the time of the injury, the *employee is performing service arising out of and in the course of his employment;*

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self inflicted.

Colo.Rev.Stat. § 8–52–102(1) (1986 Repl. Vol.) (emphasis supplied). The availability of workmen's compensation benefits to Mr. Schultz turns on the issue of whether he was "performing service arising out of and in the course of his employment" when he fell on the parking lot.

Whether an accident arose out of, or in the course of, the employment relationship must be decided by evaluating the attendant circumstances. *E.g. Berry's Coffee Shop, Inc. v. Palomba*, 161 Colo. 369, 423 P.2d 2, 5 (1967); *Gates Rubber Co. v. Industrial Commission*, 112 Colo. 480, 150 P.2d 301, 304 (1944). "If the work of the employee creates the necessity for travel, he is in the course of his employment, *though he is serving at the same time some purpose of his own.*" *Aetna Casualty & Surety Co. v. Industrial Commission*, 110 Colo. 422, 135 P.2d 140, 142 (1943) (citations omitted and emphasis supplied). *See also Denver School District No. 1 v. Industrial Commission*, 196 Colo. 131, 581 P.2d 1162 (1978); *Alexander Film Co. v. Industrial Commission*, 136 Colo. 486, 319 P.2d 1074 (1957). Thus, "[a]s a general rule, an employee who is away from home on a business trip for his employer is under continuous workmen's compensation coverage from the time he leaves until he re-

---

* Effective July 1, 1990, the legislature repealed and re-enacted portions of the "Workmen's Compensation Act" and re-named it the "Workers' Compensation Act." *See* 1990 Colo.Sess. Laws, ch. 62 at 468. The parties have not ad-

dressed whether the new or old provisions would apply to Mr. Schultz's accident, which occurred August 31, 1988. Citations herein will be to the old provisions, although I make no findings concerning which provisions apply.

turns." *Continental Airlines v. Industrial Commission,* 709 P.2d 953, 954 (Colo. App.1985).

■ When Mr. Schultz was injured he was not traveling to work, nor was he on his way home from a job. He was injured after he left his employer's office and was on his way to make a sales call. The injury occurred in the middle of his work day. Although he argues that the stop to pick up a prescription for his sister-in-law was "a distinct departure on a personal errand," *Continental Airlines,* 709 P.2d at 954, it is to be expected that a traveling salesman may occasionally be briefly interrupted or attend to personal needs while traveling to and from sales calls. Such interruptions are not unreasonable, in light of the amount of time a salesman spends traveling. Whether the interruption here was so distinct and unusual that Mr. Schultz ceased to be on the business of his employer is a question which ought to be decided by a workmen's compensation hearing officer. I thus conclude that the circumstances surrounding Mr. Schultz's accident establish a situation where workmen's compensation benefits may be available. Accordingly, Mr. Schultz must at least seek these benefits before suing for PIP benefits here.

Plaintiffs suggest that requiring Mr. Schultz to pursue a workmen's compensation claim will permit providers of PIP coverage to delay prompt payment of benefits, in violation of the "prompt payment" provisions established in Colo.Rev.Stat. § 10–4–708 (1990 Supp.) (basically requiring PIP benefits to be paid on a monthly basis). This does not appear to be the case. Section 10–4–707(5), quoted in full earlier, permits reduction of PIP benefits only "to the extent that benefits are *actually available* and covered" under the Workmen's Compensation Act "within the time period for payment of" PIP benefits. (Emphasis supplied.) Since this is a case where the claimant has refused to even seek workmen's compensation benefits, the case does not require me to pass on the meaning of this language; I hold only that Mr. Schultz may not frustrate the primacy provisions

of section 10–4–707(5) by refusing to file a workmen's compensation claim. If a claimant does file and pursue such a claim, the PIP insurer may be acting at its peril if it refuses prompt payment of PIP benefits during the period when the claimant's entitlement to workmen's compensation is being adjudicated. The policy reflected in sections 10–4–707(5) and 10–4–708 may well require the PIP insurer to pay the claimant and look later to reimbursement from the workmen's compensation insurer if workmen's compensation is ultimately determined to be available.

■ Plaintiffs also assert that Allstate is estopped from denying PIP coverage in these circumstances. They claim that Mr. Schultz relied, to his detriment, on Allstate's initial decision to handle his claim as the primary insurance carrier. I do not agree.

The Colorado Supreme Court has reiterated the elements of estoppel in the following language:

> [T]he party to be estopped must know the relevant facts; the party to be estopped must also intend that its conduct be acted on or must so act that the party asserting the estoppel has a right to believe the other party's conduct is so intended; the party asserting the estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Johnson v. Industrial Commission,* 761 P.2d 1140, 1146 (Colo.1988). *See also Department of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984). It is the last element of estoppel—detrimental reliance—which plaintiffs have failed to establish. Allstate claims that the applicable workmen's compensation statute of limitations does not run until August 1991, a date that plaintiffs do not dispute. *See* Colo.Rev.Stat. § 8–52–105(2) (1986 Repl.Vol.) (three-year limitations period), *repealed effective Jul. 1, 1990 and reenacted as* Colo.Rev.Stat. § 8–43–103(2) (1990 Cum.Supp.) (two-year limitations period). Any reasonable reliance on Allstate's original representations that it was covering Mr. Schultz's claim

necessarily ended no later than the date on which this lawsuit was filed—November 6, 1989. Mr. Schultz had ample time to commence a workmen's compensation action; indeed he still does. Allstate's changed position has not caused him any real detriment or injury.

## II. Claim for "Lost Wages"

■ Allstate also moves for summary judgment on Mr. Schultz's claim for lost wages on the ground that the claim is speculative. Arguing that Mr. Schultz's position with GMCO was being eliminated, it invokes the rule that PIP benefit recovery must be based on actual lost wages, not on lost earning capacity. *See Bondi v. Liberty Mutual Insurance Co.*, 757 P.2d 1101, 1102 (Colo.App.1988) (passenger not entitled to benefits for lost wages based upon earning capacity, since she was unemployed and did not have any employment offers at time of accident). I find it unnecessary to address Allstate's argument, because the claim for lost wages, like the other claims under the "no-fault" statute, is premature. The statute's provisions for payment of lost income, Colo.Rev.Stat. § 10–4–706(1)(d)(I) (1987 Repl.Vol.), are among the types of coverage which must be reduced by amounts actually available and covered under the Workmen's Compensation Act. Colo.Rev.Stat. § 10–4–707(5) (1987 Repl.Vol.). Therefore, Mr. Schultz must initially look to the workmen's compensation system for recovery of these benefits before seeking them through the no-fault system.

## III. Breach of Duty of Good Faith and Fair Dealing

■ Although Allstate moves for summary judgment on all of plaintiffs' claims, including the claim for breach of a duty of good faith and fair dealing, it does not separately address this claim. It seems to assume, rather, that this claim must fail if, as I have concluded, Allstate acted properly in refusing to pay benefits while Mr. Schultz was refusing to pursue his remedies in the workmen's compensation system. Thus, the issue would appear to be whether the claim for breach of a duty to

act in good faith and deal fairly survives the dismissal of the claims for breach of the insurance contract and failure to pay PIP benefits. I hold that the claim for breach of a duty to act in good faith is a distinct tort claim which can, and does, survive dismissal of the related contractual claims.

■ Colorado law does recognize an insurer's legal duty to deal with the insured fairly and in good faith. This duty is the basis for a distinct cause of action, in tort, which can be asserted when an insurer unreasonably refuses to pay a claim and fails to act in good faith. *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243, 1246 (Colo. App.1988). *See also Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984); *Bucholtz v. Safeco Insurance Co. of America*, 773 P.2d 590 (Colo.App.1988). A breach of this duty renders the insurer liable for damages naturally flowing from the breach. *Rederscheid v. Comprecare, Inc.*, 667 P.2d 766 (Colo.App.1983).

This court has likewise recognized that claims for breach of a duty to act in good faith are distinct from contract claims or claims for PIP benefits. In *Leeper v. Allstate Insurance Co.*, 738 F.Supp. 1343 (D.Colo.1987), the insured sought PIP benefits and, when payment was not prompt, brought claims for breach of contract, bad faith, outrageous conduct, and punitive damages. Upon the defendant's motion for summary judgment the court held that the tort claims were separate and distinct from the claim for PIP benefits. *Leeper*, at 1347. The court stated that "[i]f plaintiffs prevail on the contract claim, they will be entitled to payment for all benefits due to them under the contract, which are limited to the actual injuries caused by the automobile accident." *Id.* In contrast, damages resulting from the bad faith handling of an insurance claim can include other types of damages, including damages for emotional distress. *Williams v. Farmers Insurance Group, Inc.*, 781 P.2d 156, 159 (Colo.App. 1989).

■ It may seem anomalous to dismiss the contract and PIP claims as premature

and yet refuse to do likewise with respect to the related claim that Allstate breached its duty to act in good faith. In dismissing the contract and PIP claims, however, I have held only that *one* of Allstate's grounds for refusing payment of PIP benefits was correct and that Mr. Schultz cannot claim such benefits until he has sought workmen's compensation. This conclusion does not logically preclude findings that some of Allstate's alternate grounds for delaying or refusing payment were asserted in bad faith, that it unreasonably or unjustifiably delayed some payments during the period when it mistakenly thought it was the primary provider of coverage, that its initial investigation was inexcusably sloppy, or that it otherwise failed to deal with the Schultzes in good faith. The facts supporting these possible findings remain in dispute. Consequently, Allstate is not entitled to summary judgment on the separate claim that it breached a duty to deal with its insureds in good faith.

■ Although the claim for breach of a duty to act in good faith will remain pending, it makes little sense to have a trial on this claim until Mr. Schultz's entitlement to workmen's compensation has been resolved—for several reasons. First, the potential claims for PIP benefits and breach of contract, while premature at this time, share common legal and factual issues with the claim for failure to act in good faith. They should be tried together. Fed.R. Civ.P. 42. Second, because all of these claims are factually intertwined, it would be confusing for a jury to sort them out and decide what part of plaintiffs' loss was caused by defendant's tortious conduct and what part was caused by conduct which I have found to be legally justified. Third, resolution of the workmen's compensation claim one way or the other may affect plaintiffs' damages on the bad faith claim. If workmen's compensation benefits prove to be unavailable, Allstate may decide to pay benefits; if they are available, a jury may wish to consider what part of plaintiffs' damages was caused by the erstwhile refusal to seek such benefits. Consequently, further proceedings on the claim for breach of the duty of good faith will be stayed until the availability of workmen's compensation benefits is determined.

## IV. Breach of Fiduciary Duty

■ Plaintiffs claim that Allstate breached its fiduciary duty by failing to pay benefits. Allstate responds by arguing that Colorado does not recognize a claim for breach of fiduciary duty between an insurer and an insured. Allstate also claims, correctly, that it has the right to resist all invalid claims. Unfortunately neither side has adequately briefed the issue or cited applicable law.

I have been unable to find an instance where Colorado courts have recognized a fiduciary duty between the insurer and the insured in a situation similar to the one currently before me. The Colorado Supreme Court does recognize a tort action for damages arising from the bad faith denial of coverage. To date, however, it has used the term "fiduciary" only in so-called "third-party" cases—those where a liability insurer is obligated to defend the insured against an injured third party. *See Simmons v. Prudential Insurance Co. of America,* 641 F.Supp. 675, 683 n. 3 (D.Colo. 1986). Even in these "third-party" cases, the court has not spoken of a general fiduciary duty, but only of a *"quasi*-fiduciary relationship." *See Trimble,* 691 P.2d at 1141 (emphasis supplied). The court's solution to the problem was to recognize a tort claim for bad-faith breach of the insurance contract. *Id.*

There is even less reason to create a general fiduciary duty in "first-party" situations such as the one at bar. One year after the Colorado Supreme Court decided *Trimble,* it distinguished first-party situations from third-party situations. In the former "[t]he insured can directly influence the insurer's claim evaluation process and may file a civil action to compel performance by the insurer or seek damages for failure of the insurer to perform." *Travelers Insurance Co. v. Savio,* 706 P.2d 1258, 1264 (Colo.1985). The court concluded that the relationship of the insured to the insurer, in a first-party situation, is significantly different from the relationship in a third-party situation. In a first-party situation the insurer must be afforded "wide latitude

in its ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance." *Id.* (citations omitted). I therefore conclude that the tort action for bad-faith breach of an insurance contract adequately protects the insured's interest in fair dealing at the hands of the insurance company. There is no need to create a new branch of fiduciary duty law to serve the same end. Accordingly, Allstate's motion for summary judgment on the claim for breach of fiduciary duty must be granted.

## V. Intentional Infliction of Emotional Distress

The fourth claim for relief alleges that Allstate's denial of PIP benefits and related conduct establishes a claim for the intentional infliction of emotional distress. While it is clear that the Colorado Supreme Court recognizes the tort of intentional infliction of emotional distress, modeled on *Restatement (Second) of Torts* § 46 (1965), the court has limited relief to situations where the conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970); *Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517, 1523 (D.Colo. 1987). "There is a certain threshold level of conduct that must first be established for plaintiff to state a cause of action for outrageous conduct." *Simmons,* 641 F.Supp. at 683. To meet this threshold, plaintiff must allege that: (1) defendant has engaged in repeated conduct that was intended to cause or recklessly did cause severe emotional distress, or (2) if there is but a single incident, that defendant severely harassed plaintiff. *Id. See also Rawson v. Sears, Roebuck & Co.,* 530 F.Supp. 776, 780 (D.Colo.1982), *rev'd on other grounds,* 822 F.2d 908 (10th Cir. 1987).

In the present case, plaintiffs assert that large outstanding medical bills caused them mental and physical anxiety, including dizziness and stomach pains. *Plaintiff's Memorandum in Opposition to Summary Judgment,* Ex. F at 42. In their answers to interrogatories, plaintiffs recite a confusing and internally contradictory litany of Allstate's wrongful conduct. Viewed in the light most favorable to plaintiffs, this conduct may be summarized as follows: Allstate initially acknowledged coverage and paid some bills, thereby misrepresenting that there was coverage. After further investigation, it denied coverage. While it was investigating, there were delays in communications and payments. It also denied Mr. Schultz's claim for lost wages. It attempted to settle Mr. Schultz's claims "for less than the amount to which a reasonable person would have believed he was entitled by reference to Allstate's advertising." Finally, it compelled plaintiffs to institute this lawsuit. *Plaintiff's Memorandum in Opposition to Summary Judgment,* Ex. N. Mrs. Schultz further alleges that the Allstate representative was repeatedly "very nasty." *Plaintiff's Memorandum in Opposition to Summary Judgment,* Ex. E at 51.

Plaintiffs have failed to demonstrate, as a matter of law, that Allstate's conduct meets the minimum threshold level of outrageousness. *See Therrien,* 670 F.Supp. at 1525; *Simmons,* 641 F.Supp. at 683. I have already found that some of the positions taken by Allstate were legally correct. Although I have not yet passed on all of Allstate's arguments (the argument concerning the lost income claim, for example), the most which any fact-finder might reasonably conclude on this record is that Allstate may have dealt unfairly with plaintiffs and that some of the circumstances support a finding of bad faith. "While the average member of the community may not approve of someone who breaches a contract," *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo.1988), the conduct here, even if a fact-finder decides it was undertaken in bad faith, does not satisfy the more extreme *Rugg* standard for outrageous conduct. *Compare Rugg,* 476 P.2d at 756, *with Trimble,* 691 P.2d at 1142 ("question of whether an insurer has breached its duties of good faith and fair dealing with its insured is one of reasonableness under the circumstances").

Upon the basis of the foregoing, it is ORDERED as follows:

(1) Defendant's motion for summary judgment on plaintiffs' second and fifth claims (breach of insurance contract and failure to pay lost income and other PIP benefits) is GRANTED and those claims are dismissed without prejudice, in order that Mr. Schultz may pursue a workmen's compensation claim.

(2) Defendant's motion for summary judgment on plaintiffs' third claim for relief (breach of fiduciary duty) is GRANTED, and that claim is dismissed with prejudice.

(3) Defendant's motion for summary judgment on plaintiffs' fourth claim (intentional infliction of emotional distress) is GRANTED, and that claim is dismissed with prejudice.

(4) Defendant's motion for summary judgment on plaintiffs' first claim (bad-faith breach of contract) is DENIED. Proceedings on that claim are stayed until further order of the court. The parties shall, jointly or separately, file reports on or before August 31, 1991, describing the status of any efforts by Mr. Schultz to pursue workmen's compensation claims.